### LUDLOW v. GROTON BRIDGE CO.

(Supreme Court, Trial Term, Tompkins County. February 22, 1896.)

INJURY TO EMPLOYE—NEGLIGENCE OF FOREMAN.
    A master who has furnished proper trucks for moving iron, and proper stays for fastening it on, is not liable for injury to an employé by failure of the foreman to properly secure the iron on a truck.

Action by C. La Verne Ludlow against the Groton Bridge Company. There was a judgment of nonsuit (36 N. Y. Supp. 452), and plaintiff moves for a new trial. Denied.

Smith & Dickinson, for plaintiff.
S. D. Halliday, for defendant.

SMITH, J. The question here arises upon a motion for a new trial, made after the direction by the court at circuit of a dismissal of the plaintiff's complaint. The facts are these: The plaintiff was employed as a laborer in the bridge works of the defendant. One Hemmingway was the foreman of the bridge works, and, in removing certain heavy iron, he had failed to properly secure the same to the truck, and by reason of his negligence the iron fell over, and caused the injury of which the plaintiff complains. It is not claimed that the defendant failed to supply proper trucks for the service, nor that they failed to supply proper stays by which the iron could be fastened.

The claim of the plaintiff is that the foreman, in securing the iron to the truck, was acting as the alter ego of the master, and that his negligence, rendering unsafe the plaintiff's place to work, was negligence for which the defendant can be held liable.

I have carefully examined the elaborate brief of the plaintiff's counsel upon this motion.   The general rules as stated by him are undoubtedly correct.   The master is bound to furnish a safe place to work.   He is not only bound to furnish a safe place, but he is bound to keep it in a safe condition.   It is undoubtedly true that, in the performance of this duty, his responsibility cannot be delegated.   The act of the humblest mechanic, in the performance of this obligation, is his act, for which he is responsible.   This is the doctrine which was explicitly held in the case of Ballard v. Manufacturing Co., recently tried at Cortland, and to which reference was made upon the trial. That case, in the court of appeals, is reported in 145 N. Y., at page 619, 40 N. E., at page 163, and reported below in 71 Hun, at page 582, 24 N. Y. Supp., at page 1101.   This rule, however, has been somewhat limited by the decisions; and, while the master is still held liable for the original furnishment of a safe place to work, and for its subsequent condition, he is no longer held liable where the place has been rendered unsafe by the negligence of a coservant, while that coservant is engaged in performing his duties as coservant.   In Crispen v. Babbitt, 81 N. Y. 516, one B. was a foreman, in charge of defendant's works.   By his carelessness in letting steam into an engine, the plaintiff, an employé of defendant, was injured.   It was held, in that case, that the act of B. in letting on steam was the act of a mere operative, for which the defendant would be liable to a stranger, but not to a fellow servant of the negligent employé.   In Webber v. Piper, 109 N. Y. 496, 17 N. E. 216, the plaintiff was injured while using a circular saw in defendants' factory where he was employed.   In an action to recover damages for the injury, it appeared that the accident was caused by the dullness of the saw.   Defendants had furnished duplicate saws, so that, when one needed to be sharpened and reset, it could be replaced by the other.   It was the duty of one M., also a servant of defendants, to sharpen and reset the saws when necessary. On the morning of the accident, plaintiff notified M. that the saw he was using was dull, and asked for another.   M. replied that he had no time then to sharpen a saw, and directed plaintiff to go on with his work.   It was there held that the plaintiff was properly nonsuited, that no negligence on defendants' part was shown, and that their duty was performed when they furnished suitable saws, and the means and conveniences for keeping them sharp and properly set. Judge Finch, in writing the opinion in that case, declares some principles of law which are peculiarly applicable to the case at bar.   Upon page 499, 109 N. Y., and page 216, 17 N. E., he says:

"There are many matters of detail, in the management of safe and adequate machinery, which must be intrusted to the operatives, and as to which the master owes no duty, except the employment of competent workmen; and we deem this a case of that character.  The line of division between the duty of the master to furnish and maintain safe and adequate machinery, and that of the operative to manage and handle it with prudence and care, is difficult to define by any general description, but is quite obvious when

each case, as it arises, comes under consideration. In the one before us, the neglect, if any, was in the detail of the management of the machinery. A master builder might furnish proper tools to his workmen, but it would not be his duty to sharpen every chisel as it became dull, or sharpen every saw when that need arose. The appellant relies upon the case of Kain v. Smith, 89 N. Y. 375. If, in that case, the master had furnished another jigger, perfect in all respects, and safe and adequate for use, and the neglect had been that the foreman used the old one, which had become unsafe, when he might have used the new one, a very different case would have been presented."

In the case of Kain v. Smith, cited by Judge Finch, it had been held that the place had been rendered unsafe by the use of a defective jigger by the foreman. It was not claimed that the act of the foreman was the ground of negligence, but the jigger itself, which was a tool required to be used, was defective. In the light of these facts, the law, as declared by Judge Finch,—to the effect that, if the neglect had been that of the foreman, in using an unsafe jigger, when a safe one had been provided, a very different case would have been presented,—is to my mind declarative of the principle which must govern the case at bar. Such would have been the precise facts which are here for adjudication.

In the case of Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, Justice Peckham declares the same principle. In that case it appeared that the decedent was employed by the defendant as a laborer in his quarry, and was engaged in drilling rock for blasting purposes under the direction of D., defendant's foreman. After a blast, it was found that the charge in one of the holes had not exploded. D. examined it, and found the fuse unconsumed, but failed to remove it. He set other workmen to work drilling within 2 feet, and directed C. to drill at a place some 20 or 30 feet distant. The fuse caught fire, and the charge in the hole exploded, causing C.'s death. It was there held that, assuming D. to have been negligent, his negligence was that of a fellow servant, for which the master was not liable. Justice Peckham, in writing the opinion for the court, says:

"The quarry was the place where the work was to go on, and the master was bound to make it a reasonably safe place for such work, considering its character, and the necessarily dangerous nature of the work. For the manner in which the persons employed in the quarry should themselves perform their work, the master was not liable. It is not claimed that the master did not furnish a safe place to work in the first instance; that is, when the deceased was employed, the quarry was as safe as any quarry is where frequent blasts are being fired off. But the manner of the performance of each of the various details of the work, by which, as a whole, it was to be conducted, rested necessarily upon the intelligence and care and fidelity of the servants to whom these duties were entrusted. It cannot be that, every time a blast was exploded, and the men came back, the manner of their distribution for work was the duty of the master, and that the order of a foreman, mistakenly or negligently given, must be regarded as the order of the master, in filling a duty to furnish a safe place to work in. It is, as it seems to me, a detail of the working or management of the business, the risks attending which have been assumed by the party taking employment."

And, on page 7, 126 N. Y., and page 905, 26 N. E., Justice Peckham further says:

"In this case, it is the ordinary one of choosing a method, a time, and a place for continuing the work in the quarry; and this involved questions of judgment and discretion committed in this instance, it would seem, to Doran.

He, it may be conceded, mismanaged or misjudged the matter, and, after placing the deceased at work, negligently or improperly placed others at work too near the hole in which the powder had not exploded; and the consequence was this most unfortunate accident. The accident resulted from a negligent act done in the very course of the work, and by one of the fellow workmen of the deceased. The negligent act was a part performance of the work itself, the risk of which the deceased had assumed. The master had provided a competent and experienced foreman, who had been in his employment a number of years, and he was not chargeable with the consequences of a place to work made dangerous only by the carelessness and neglect of a fellow servant, although that fellow servant happened to be a foreman."

See, also, Scott v. Sweeney, 34 Hun, 292; Beilfus v. Railway Co., 29 Hun, 556; Faber v. Manufacturing Co., 126 Pa. St. 388, 17 Atl. 621.

These authorities would seem to be decisive of this case. The broad doctrine that the master is liable for any act of a fellow servant which renders unsafe the place to which the plaintiff has been assigned to work is no longer maintainable. Suppose the foreman had been absent, and one of the more experienced workmen had been moving this iron; can it be claimed, for a moment, that his negligence would be the negligence of the master? Suppose, by negligence, a workman allows his tool to fly, and strike a fellow workman; can it be contended, for a moment, that his negligence is the negligence of the master in failing to secure a safe place to work? Within the authorities, I think, and certainly within the doctrine of the controlling cases in this state, the act of Hemmingway, although the foreman of the defendant, was an act rendered necessary in prosecuting the work in its detail, and the act was that of a fellow servant.

The judgment dismissing the complaint must therefore stand.