MARGARET ULRICH, as Administratrix, etc., of JOHN ULRICH, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — death of an employee resulting from the method employed by a foreman in raising a bridge pier into position.*

A master is not bound to supervise the work to be done or to direct the manner of doing it, but may intrust those duties to others, and he will not be liable to his employees for the acts of the others intrusted with such duties unless he has failed in his duty when selecting them.

The master is not liable where his foreman puts a servant in a dangerous place if the danger arises only out of the manner of performance of the details of the work.

The determination by the foreman of a railroad corporation, engaged in placing a bridge pier in position, of the questions whether the pier shall be raised by tackle, and, if so, whether it shall be braced while being raised and whether a chain shall be used to fasten the tackle to a rail, are matters pertaining to the execution of the details of the work, and the railroad corporation is not liable for the death of an employee who, while engaged under the direction of the foreman in lifting the pier by means of a piece of board, is killed by the falling of the pier caused by the breaking of the chain, in the absence of proof that the corporation did not supply other tools and equipment than those used by the foreman.

APPEAL by the plaintiff, Margaret Ulrich, as administratrix, etc., of John Ulrich, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 15th day of October, 1894, upon the dismissal of the complaint by direction of the court after a trial at the Monroe Circuit, and also from an order entered in said clerk's office on the 9th day of October, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

The action was brought to recover the damages resulting from the death of the plaintiff's intestate caused, as alleged, by the negligence of the defendant.

*W. H. Sullivan*, for the appellant.

*Albert H. Harris*, for the respondent.

Judgment and order affirmed, with costs, on the opinion of YEO-MAN, J., delivered at the Circuit.

All concurred.

The following is the opinion of YEOMAN, J.:

YEOMAN, J. :

The question presented upon this motion is: Was the nonsuit right? The plaintiff's intestate, John Ulrich, was a section hand upon the road of the defendant. The defendant was constructing an overhead bridge across its track upon a highway in the country. This work was being done by a gang of carpenters in charge of a foreman. The bridge was to be, when constructed, about twenty feet above the track and to be supported by abutments at the ends and two piers, one on each side of the track. These piers were of hemlock timbers and consisted of a cap and bottom sill, each about thirty-two feet long and six by eight inches, and three posts about twenty feet long, each eight by eight inches. At this place the road ran through a cut with sloping banks. The gang of carpenters placed one of the piers with its base where it was to permanently rest near the track, and with its top upon the bank. They raised the top about four feet from the bank and blocked it up. They attached to the cap sill a tackle, carried it across the track and attached it to the body of a large tree upon the top of the opposite bank, so that the hitch upon the tree was about twenty feet above the track. They then attached one end of another tackle to the first, and its other end to the rail of the track. The hitch at the rail was made by a chain, the links of which were of one-quarter to three-eighths inch iron. This chain was passed under the rail from the outside and looped about a bar placed against the rail on the inside. The gang of sectionmen to which the deceased belonged, and also the gang of sectionmen belonging to the section upon which the bridge was being built, were called upon, while matters were in this condition, to help raise this pier. They were ordered to take hold of the cap sill and lift and to use whatever they could get hold of to assist them. The deceased provided himself with a piece of board or scantling, and others did the same. They distributed themselves along the cap sill upon the bank, which was sloping and slippery from recent rains. Several men began pulling

upon the tackle fastened to the rail, and the men along the cap sill lifted upon it until the pier was raised more than half way up. When it was raised beyond the reach of their hands, the men along the cap sill placed the boards and the like, with which they had provided themselves, against the pier and lifted by means of them. The chain at the rail suddenly broke and the pier fell back, striking the deceased while he was using the said piece of board or scantling and killing him.

There were no pike poles present at the time and there is no evidence as to whether or not the defendant had provided the gang of carpenters with any, or with any chain other than the one used. There was proof tending to show that it was not a safe or proper thing to put men behind this pier when raising it with tackle, without providing them with pike poles or with something else which could be used as a brace to prevent the pier from falling in case the tackle gave way. The proof also showed that the pier could have been properly raised by using a " jig pole or shear pole " without endangering the men. The tackle was not hitched so as to draw at right angles with the pier, but there was no evidence tending to show that this contributed to the accident, except as it might be inferred that more strain was put upon the chain by reason of this. There was no evidence as to the condition of the broken link of the chain except that " it had just parted."

It is clear that the nonsuit cannot be sustained upon the question of the deceased's contributory negligence. The plaintiff claims that the jury should have been permitted to say whether or not the defendant was chargeable with negligence because of the manner in which the pier was being raised, because of the breaking of the chain, because the men were put under the pier without protection, and because the place upon the bank where they were directed to work was sloping and slippery. There was no evidence tending to show that either the slope of the bank or its slippery condition contributed to the accident. There is nothing to show that any of the appliances used were defective in any manner. The chain broke, but there is no evidence tending to show that it was a defective chain, neither is there any evidence to show what strain it ought to have borne nor what strain it was subjected to. There is nothing to show the weight of the pier, and it is a necessary result of

mechanical laws that a part of the strain was borne by the tree and a part by the chain, and that the relation of those parts depended upon the number of sheaves in the blocks of the tackle-between the pier and the tree. This number is not shown by the evidence. The chain is no part of the tackle, and if the breaking of the chain is to be attributed to the fault of some one, it was the fault of the person putting a chain of that weight to that use. Putting the men under the pier, without providing any means of supporting it in case the tackle gave way, was preparing a deadfall for them in case of accident. The pieces of boards used by them were not for the purpose of protecting them in such case, but to aid them in lifting when they were unable to do so with their hands. If braces of any kind sufficiently strong to support the weight of the pier had been used in following it up as it was raised (and pike poles might have been used for that purpose), the accident would have been averted. The same is true if some other method of raising the pier had been adopted instead of using the tackle.

The question arises, was the master remiss in his duty in any of these matters? " The liability of the master, when the negligence was not his personal act or omission, but the immediate act or omission of a servant, turns, as was said in *Crispin* v. *Babbitt* (81 N. Y. 516, 521), upon the character of the act, and this was but the enunciation of the established doctrine in this State upon the subject. If the co-servant, whose act caused the injury, was at the time representing the master in doing the master's duty, the master is liable; if, on the other hand, he was simply performing the work of a servant in his character as a servant or employee merely, the master is not liable. The injury in the case last supposed would, as between the master and the servant sustaining the injury, be attributable solely to the immediate author and not to the master. In harmony with the general principle that the character of the act is the decisive test, it has been repeatedly decided in this court that the fact that the person whose negligence caused the injury was a servant of a higher grade than the servant injured, or that the latter was subject to the direction or control of the former, and was engaged at the time in executing the orders of the former, does not take the case out of the operation of the general rule, nor make the master liable." (*Loughlin* v. *State of New York,* 105 N. Y. 159.)

It is not the duty of a master to take supervision of the work, or to direct the manner of doing it.   Those matters he may intrust to others, and he will not be liable to his employees for their acts if he did not fail in his duty when selecting them.   " It would be extending the liability of a master beyond any established rule .to require him to oversee and supervise the executive detail of mechanical work carried on under his employment, and there is no rule of law which authorizes it." (*Hussey* v. *Coger*, 112 N. Y. 614, 621.) Using the chain to fasten the tackle to the rail was a matter pertaining to the execution of the detail of the work.   So, also, was determining the questions as to whether the pier should be raised by tackle or in some other way, and as to whether or not it should be braced while it was being raised.

In *Mahoney* v. *The Vacuum Oil Company* (76 Hun, 579) the foreman in charge of the work in hand deemed it advisable to place men over a hole in the floor.   He placed a plank across it and put them upon it to assist with the work.   The plank was not strong enough for the purpose and broke.   It was held in that case that the master was not chargeable with the act of his foreman.   In a like case (*Butterworth* v. *Clarkson*, 3 Misc. Rep. 338) the court said : " There is absolutely no evidence to support a finding that the plank was furnished by the defendants for the use to which it was put by the foreman.   The plank was applied by the foreman to a use that was a detail of the business within his discretion and judgment in the management of the work ; for an injury resulting from such an act the defendants are not liable."

It is proper to observe that all that class of cases which turn upon defective appliances or materials having been used are not applicable to this case.   Whatever was used was, so far as the proof shows, good of its kind.   The same is true of the cases in which harm came because of the unsafe condition of the place in which the work was being done.   In this case the harm came from the unsafe manner of doing the work.   The fact that the foreman put the men in a dangerous place is not a matter affecting the master if the danger arises out of the manner of performing the detail of the work.   In *Loughlin* v. *State of New York* (*supra*) the foreman put an employee in a dangerous place under a bank of earth which the foreman himself had loosened so that it fell upon

him. In *Cullen* v. *Norton* (126 N. Y. 1) the foreman put the men employed in a quarry at work near a charged hole which had failed to explode. It was held in those cases that the master was not chargeable with the acts complained of. (*Hogan* v. *Smith*, 125 N. Y. 774; *Cregan* v. *Marston*, 126 id. 568.)

When the master intrusts others with the execution of his work, it is his duty to furnish them with proper tools, appliances and equipment for such work. If, therefore, the defendant sent the gang of carpenters out to do this work without other tools and equipment than those described the jury might justly charge it with the results of the manner in which the foreman executed the undertaking. In this case, however, there is no evidence as to what was or was not furnished to these carpenters with which to prosecute their work. All that appears is that they had in actual use the appliances described. There was no attempt to prove whether or not others were provided for the use of this gang. It would be sheer assumption for a jury, in the face of our common knowledge with reference to such matters, to say that none others had been provided.

The motion should, therefore, be denied, with ten dollars costs.