(42 App. Div. 398.)

### HATTON v. HILTON BRIDGE CONST. CO.

(Supreme Court, Appellate Division, Third Department. July 6, 1899.)

MASTER AND SERVANT—TOOLS AND APPLIANCES.

In an action by a servant for personal injuries sustained by the erection of a scaffold, the evidence showed that the defendant's president, a skilled engineer, had devised safe plans for erecting it, the timbers of which were to be suspended by perpendicular rods attached to iron girders above. To prevent the rods from slipping on the girders, clamps were made to be placed around the girders for each rod. The clamps were delivered with the rest of the material. The foreman in charge knew of their delivery, and the use for which they were made, but he did not use them, thinking it was unnecessary. If they had been used, the accident could not have happened. All the rods but one had been hung when the plaintiff was ordered to work, and that one he did not see placed. He was a common laborer, and did not possess the mechanical skill required to determine whether or not the clamps were necessary. *Held*, that it was error not to submit to the jury the question of defendant's negligence and plaintiff's freedom from contributory negligence.

Parker, P. J., and Merwin, J., dissenting.

Appeal from special term, Albany county.

Action by Timothy A. Hatton against the Hilton Bridge Construction Company. From a judgment for defendant, entered on a directed verdict, plaintiff appeals. Reversed, and new trial granted.

The defendant was employed to place a skylight over the senate staircase in the capitol at Albany. It was necessary to build first a temporary scaffold. Its president, a skilled and experienced engineer, in conjunction with its chief draftsman, after consultation, devised plans for the preliminary work. These contemplated the suspension of a platform across the opening of the senate staircase, called a "well hole," under the place where the skylight was to be built, to be composed of timbers placed at intervals of about 10 or 12 feet apart over the open space of the "well hole." Planks were to be laid over these timbers so as to make a floor. This structure was to be suspended in place by perpendicular iron rods fastened to the girders or trusses over the top of the "well hole" by iron straps. These girders were so placed that their west ends were higher than their opposite ends, forming an incline. There was also devised by the president and the draftsman a device to prevent the iron strap from slipping on the girder,—a clamp, formed by two straps of iron, with holes through either end of both straps, through which bolts were to be put, which, by means of nuts, could be screwed tight to the girder. It was intended that these straps should be placed around the girder below the iron straps which supported the rods. The construction and object of these clamps was explained to the foreman in charge of the outside construction. Orders were given to make these clamps, and testimony was introduced by the defendant to the effect that they were made, one for each rod, and taken to the capitol, and delivered with the rest of the material, on the Saturday preceding the accident, and that at the time of the accident they were in the room in the top of the capitol with the rest of the materials; that one Joseph Austin, the foreman, had charge of the details of the execution of the work in which the defendant was engaged, including the erection of the temporary structure. He was aware of the purpose and use for which these clamps were intended, and he knew they were with the rest of the material when the work commenced. At the time of the accident, all the rods had been hooked in the manner contemplated, except that none of the clamps had been put on. The timbers were all in place, except the last one, and they were engaged in placing that. Austin testified he did not put the clamps on because he thought it was not necessary; that there was no danger of their slipping down. If these clamps had been on, the accident could not have happened. On Monday, the 17th day of August, 1896, the plaintiff, employed by the defendant as a laborer in the

work of erecting the scaffold, by direction of defendant's foreman was standing on the timber in question, when the straps by which the iron rod which supported the timber was attached to the girder, slipped down four feet, throwing the end of the timber on which the plaintiff was standing around against a parallel timber, and precipitating the plaintiff about 40 feet to the floor underneath. He sustained severe injuries, and brought this action to recover damages therefor. The trial court directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff has appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

James W. Eaton, for appellant.
Edward W. Douglas, for respondent.

PUTNAM, J. A master owes to his servant the duty of furnishing a safe place in which to prosecute his work, and adequate and suitable tools, implements, and appliances therefor, and this duty cannot be delegated to any servant, of whatever grade, so as to exempt the master from liability to a servant injured by its nonperformance. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Laning v. Railroad Co., 49 N. Y. 521-532; Corcoran v. Holbrook, 59 N. Y. 517. In the performance of this duty, care and caution to protect the servant is required of the master, and a proper inspection, both before the work of the servant has commenced and during its continuance. McGovern v. Railroad Co., 123 N. Y. 281, 25 N. E. 373; Bulkley v. Iron Co., 117 N. Y. 645, 22 N. E. 1131; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Fuller v. Jewett, 80 N. Y. 46; O'Donnell v. Gas Co., 91 Hun, 184, 36 N. Y. Supp. 288; Richards v. Hayes, 17 App. Div. 422, 45 N. Y. Supp. 234; Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466. If a servant sustains damages in consequence of the failure of the master to perform this duty, the latter is liable therefor. But it is also an established doctrine that, while the master is liable to a servant who is injured by the negligent act of another, if such act relates to the duty the master owes to its servants, if the act is one pertaining to the duty of an operative, the employé performing it, no matter what his position or rank, is a fellow servant, and the master is not liable for his negligent act. Crispin v. Babbitt, 81 N. Y. 516. We are called upon, therefore, to determine whether or not it was the business of the defendant, not only to prepare clamps, which, if used, would have prevented the injury to the plaintiff, but also, by a proper inspection of the work, to see that they were properly placed. The plaintiff, at the time of the accident, under the direction of the defendant's foreman, was standing on a timber suspended by an iron rod attached to a girder above. The clamp, prepared to prevent the slipping of the rod on the girder, had not been used, and hence the appliance or instrumentality to support the scaffold, when the plaintiff commenced work thereon, was unsuitable and unsafe, and had never been made otherwise. The placing of the rods preceded the work the plaintiff was called upon to perform. He testified that they were all, but one, affixed to the girder the Saturday before he was called to work on the scaffold, and that one he did not see placed. The evidence permitting a finding by the jury that the

plaintiff did not know how the rods were fastened to the girder, that such fastening was insecure, or that clamps had been provided to prevent the rods from slipping, or that they were necessary for that purpose. From the testimony it is not clear that, although the clamps had been made, they were, at the time of the accident, at the place where the work was being carried on. The testimony of the defendant's president, Sweet, and vice president, Hilton, showed that it required mechanical knowledge and skill, which the plaintiff, a laborer, cannot be deemed to have possessed, to determine whether or not clamps were required. The jury, I think, could have properly found from the evidence (had it been submitted to them) that the defendant did not discharge its whole duty to its laborers in furnishing clamps to its foreman, but that such duty required it to place the clamps so that the timber on which the plaintiff was called to work was securely attached to the girder above; that it failed to provide the plaintiff a suitable place in which to perform his work, or safe appliances therefor; that the act of the foreman, Austin, in omitting to use the clamps, constituted a failure to discharge a duty the defendant owed to the plaintiff to exercise proper care to protect him from injury; that it had a duty of inspection which was not performed. Under the authorities above cited, the duty of exercising care and caution to make the place where the plaintiff was called upon to work—and to that end a careful and proper inspection thereof—was the duty of the master, and not of its servants. Being a corporation, it was necessary to intrust this duty to a servant. But for the act or omission of the foreman in that regard the defendant was responsible.

In Manning v. Hogan, 78 N. Y. 615, 616,—an action to recover damages for the death of the plaintiff's intestate, caused by the fall of a scaffold claimed to have been negligently constructed,—it was said "that the question of negligence in building the scaffold was for the jury, and that it was not sufficient that there was enough of suitable material provided to build the scaffold. It needed that there should be skill and judgment in the use thereof." So, in this case, the master was bound not only to furnish proper material for the platform, but to exercise skill, judgment, and due care in the use thereof. This skill, judgment, and due care were required of the master.

It is claimed that the structure the plaintiff was at work upon when injured consisted, not only of the timbers on which the floor of the scaffold was to be placed, but also the rods to support such timbers; that, the defendant having furnished proper rods and clamps to prevent the same from slipping on the girders above, and proper materials and appliances for the structure, as well as a competent foreman, the placing of the rods and the building of the scaffold was the work of the defendant's servants; that although the plaintiff did not aid in affixing the rods to the girders, that work was done by other employés of the defendant engaged in the building of the scaffold; and such other employés, including the foreman, must be deemed co-servants of the plaintiff, and hence the defendant is not liable for his or their negligence. Hussey v.

Coger, 112 N. Y. 614, 20 N. E. 556; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860; Ulrich v. Railroad Co., 25 App. Div. 465, 51 N. Y. Supp. 5; Kennedy v. Iron Works, 12 Misc. Rep. 336, 33 N. Y. Supp. 630; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952. I do not regard the above authorities, or others relied upon by the learned counsel for the respondent, as analogous in principle to the present one. Those authorities refer to accidents occurring during the progress of the work, where the servant is necessarily aware of the danger; where he knows, or ought to know, as much in regard to the safety of the place where he is called to work as the master,—to cases where the master has performed his duty of furnishing and maintaining a safe place for the servant to perform his work in, and safe and proper instrumentalities therefor. After that duty has been performed, they determine that, if a servant is injured because of the manner of the performance of the work, the master is not liable. It is often difficult in cases like the one under consideration to determine the question as to what is the master's work and what the servant's work. Every case must be judged by its own facts and circumstances. I think, under the facts shown on the trial, it was the defendant's duty, as master, to make the place where the plaintiff was called upon to work safe, and, although it delegated that duty to the foreman, that it is responsible for his acts or negligent omission of duty in that regard. The defendant was erecting a scaffold, the timbers of which, instead of being supported in the usual manner underneath, were suspended by iron rods attached to curved girders above. On the timbers and scaffold to be placed thereon defendant's servants were to be employed. It was defendant's duty, as master, to devise a plan to render the structure safe, and prevent the rods from slipping on the girders. That duty was performed. But it was also its duty, by a careful inspection, to see that the plan was carried out. That duty, although intrusted to its servant, was the master's, and not the servant's, work. The forming of a proper scheme to make the scaffold a safe place for its employé was not the performance of the whole duty the defendant owed to its servants. It was bound, also, to see that the appliance prepared to prevent the rods from slipping was used; that the plan it prepared was adopted, and carried out.

Again, the jury would have been permitted to find, if the case had been submitted to it, that the danger to which the plaintiff was exposed from the slipping of the rods was a hidden one; that it required mechanical knowledge and skill to determine whether or not clamps were required, which the plaintiff, as a laborer, did not possess; that he did not know that the clamps that were prepared were necessary; that he was exposed to a secret danger, arising from the failure of the defendant to effectuate its plan to render the place on which he was called upon to work safe. The authorities on which the respondent relies do not hold that it is not the duty of the master to protect the servant from such a hidden peril, but, impliedly, a contrary doctrine. In those cases the master was held not liable, be-

cause, in the first instance, he had performed his duty of furnishing a servant with a safe place to work in, and the injury to the servant was caused by the manner of conducting the work, the perils arising therefrom being known to the servant as well as the master. Thus, in Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952, where the servant was killed by the breaking of a rope attached to a derrick, the master having provided other ropes to be used by the servant when required. Finch, J., remarked:

"The workmen, therefore, were left in a position of perfect safety as to the sufficiency of the falls against everything save their own negligence or error of judgment. The rope was swinging before their eyes, and would disclose its approaching weakness on the surface before it became rotten or pulpy within, and they were able to know how long it had been used, and so whether prudence required it to be changed. They were at liberty, and knew they were at liberty, to supplant one which exhibited marks of weakness with another, both new and sufficient, from the supply kept on hand."

To the same effect, see Kimmer v. Weber, 151 N. Y. 417–423, 45 N. E. 860; Powers v. Railroad Co., 98 N. Y. 274–280; Shaw v. Sheldon, 103 N. Y. 667, 668, 9 N. E. 183; Marsh v. Chickering, 101 N. Y. 396–399, 5 N. E. 56. Those authorities, and others cited by the respondent, do not hold that it is not the master's duty, even during the progress of the work, to guard the servant from risks that are not obvious, that are unknown to him, and which would require mechanical knowledge and skill to detect. The placing of the rods preceded the work the plaintiff was called upon to perform, and he had the right to assume that they were safely and properly affixed to the girder above, that the master had performed its duty in furnishing a proper support to the timber he was directed to stand upon. If the views above stated are correct, the questions as to the defendant's negligence and the contributory negligence on the part of the plaintiff should have been submitted to the jury. It also follows that the plaintiff did not assume the hidden danger arising from the improper affixing of the rods to the girder, and also that the question as to his contributory negligence was for the jury.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except PARKER, P. J., and MERWIN, J., dissenting.

LANDON, J. I concur. The master intended to furnish the plaintiff with a safe place in which to labor, and for that purpose furnished its foreman with the proper safety appliances to be used. The foreman failed in the discharge of his trust, and did not use the safety appliances, and thus the defendant failed to perform its duty to the plaintiff. The result was just the same as if the defendant had furnished no safety appliances. If the clamp had been used, but imperfectly screwed to its place, that would have been negligence in the servant's work, but not to use it at all was the abandonment on behalf of the master of its known duty. The master gave to its untrustworthy agent the power to leave its duty undone, and he left it undone.