MALTBY v. BELDEN et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—WARNING OF DANGER.

A gang of men, including deceased, were ordered by the foreman to assist in putting out a fire which endangered the master's property, and deceased was killed by the falling of a burning stump. The foreman had been informed that the stump had burned at the bottom so that it was likely to fall, but neglected to warn the men. The stump and vicinity were enveloped in smoke and steam, and there was much noise and confusion. *Held*, that defendant's foreman was negligent in failing to warn deceased of the danger.

**2. SAME—SCOPE OF EMPLOYMENT.**

Where a gang of men are ordered by their foreman to assist in putting out a fire which endangers their master's property, and in so doing they work under another foreman, the master is liable for the negligence of the latter, resulting in the death of one of the men, although he had no connection with the men, or control over them, when engaged in their regular work.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

A member of a pile-driving gang, while engaged in putting out a fire which endangers his master's property, was killed by the fall of a burning stump. The stump and vicinity were enveloped in smoke, and there was considerable confusion. *Held,* that deceased was not negligent in failing to notice the dangerous condition of the stump.

Smith and Adams, JJ., dissenting.

Appeal from trial term, Onondaga county.

Action by Olive Maltby, as administratrix of William Maltby, deceased, against Alvin J. Belden and another. There was judgment for plaintiff, and defendants appeal. Affirmed.

The action was commenced on the 12th day of April, 1898, to recover damages for the death of plaintiff's intestate, which occurred on the 11th day of October, 1897, and was alleged to have been caused through the negligence of the defendants. At the time of the accident the defendants, who were contractors, were engaged in deepening a section of the Erie Canal extending east and west in the town of Camillus, Onondaga county, N. Y., at a point about 200 feet west of a highway which crosses the canal at substantially right angles. The defendants were also engaged in excavating a portion of the "State Ditch," so called, which extended from the highway at a point about 1,000 feet south of the canal, diagonally and westerly to a point where it intersected the canal about 1,000 feet from the highway, thus forming a triangle about 1,000 feet on each of its sides, bounded on the east by the highway, on the south by the State Ditch, and on the north by the canal. In the prosecution of the work in the canal the defendants had a gang of men employed, known as the "Pile-Driver Gang," under the direction of one Orson Seely as foreman, and over him there was a walking boss by the name of Marcus. In the prosecution of the work in the State Ditch the defendants had two gangs of men employed, each gang operating an excavating machine, under the direction of Savage and Welch, respectively, as foremen, and over them was a walking boss named Edward Hannan. The Seely gang and the two gangs in the State Ditch had no connection with each other; and Hannan, who was in authority over the foreman of the last two gangs, had no control or authority over Seely, the foreman of the former, in the prosecution of the regular work of such gang. The space between the sides of the triangle above described was low ground, level and swampy; and it contained many stumps, much dry grass, weeds, and rubbish, all of which at the time of the accident was very combustible. In the triangle, and about 100 feet south of the canal, there was an old elm stump, about 30 feet high, with some ragged stubs or ends of branches projecting from the upper part. The bark had all fallen off. It was white and weather-beaten, and plainly showed decay. About 25 feet to the northwest of this stump there was a pile of piles from 25 to 40 feet long, and a similar pile about the same distance to the northeast of the stump. Between these two piles there was a space of about six feet, and this passageway was substantially in a line from the stump to the canal. On the morning of the accident a fire started near the State Ditch, and near where the gang of men were operating the large excavator, of which Thomas Welch was foreman. The fire burned rapidly, and extended towards the piles referred to. The gang of men under Welch, by his direction, first attempted to put out the fire, and, being unable to check it, he sent word to Hannan, the walking boss over the two excavating gangs, to send additional men, and Hannan directed the gang of men of which Savage was foreman to aid in extinguishing the fire. At about the same time Orson Seely, who was foreman of the pile-driver gang, in which the plaintiff's intestate was.

working, without any direction from Hannan or any one else, gave orders to his men to go to the place of the fire and aid in extinguishing it. So that the three gangs of men, numbering in all between 40 and 50, were engaged in fighting the fire,—the gang operating the large excavator, ordered so to do by its foreman, Welch; the gang operating the small excavator by Hannan; and the gang operating the pile driver, in which the plaintiff's intestate was working, by the foreman, Orson Seely. A strong wind was blowing at the time. The combustible material in the triangle made a hot fire, and the elm stump was ignited. A large amount of smoke enveloped the men, steam was generated, sparks were flying, and there was a good deal of noise and confusion. The plaintiff's intestate was engaged in carrying water from the canal for the purpose of extinguishing the fire, which was then burning the piles of the defendants, when the elm stump fell upon him and caused his death. The defendants were not present at the time of the fire. Marcus, the walking boss of the Seely gang, was also absent. There is no proof that Seely, the foreman of the gang in which the plaintiff's intestate was working, knew that the stump had burned so that it was liable to fall, or that he had any other or different knowledge about it than was known by all the other men. There is evidence tending to show that Hannan, who was the walking boss over the two excavating gangs, was warned that the stump was dangerous and was about to fall, and that that fact should have been known to him from its appearance, considering the opportunity he had to observe its condition; that he neglected to take any precaution to protect the men against its fall, or to inform them of its dangerous condition. It also appears that Hannan gave general directions to the men, irrespective of which gang they belonged to, with reference to putting out the fire. The foregoing are the facts substantially as claimed by appellants' counsel.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

W. S. Andrews, for appellants.
M. E. Driscoll, for respondent.

McLENNAN, J. The rules of law which govern cases of this character are well settled, and the only difficulty arises in applying them to the facts here present. The defendants were the masters. As such they were charged with the duty of furnishing their employés a reasonably safe place in which to work, considering all the circumstances, and reasonably safe appliances, and of informing them of any impending danger of which the masters had knowledge, and of which the employés had no knowledge, and could not have discovered by the exercise of ordinary care and prudence. Orson Seely, the foreman of the pile-driver gang, of which plaintiff's intestate was one, stood in the place of the masters, and was chargeable with the performance of their duties in their absence, so far as concerned the prosecution of the regular work in which that gang was engaged. The same was true of the foremen of the excavator gangs, Welch and Savage, respectively, and also of Hannan, when present, who had control over both Welch and Savage. As representative of the masters, it was the duty of each of such foremen and of Hannan, the walking boss, to protect the property of the masters which was for use in connection with the work, and which became endangered, accidentally or otherwise, in the prosecution of the regular work; and for that purpose it was their duty to request the assistance of the men under them, respectively, when necessary. In case the employés acceded, left the regular work, and engaged in protecting the masters' property, the foreman still repre-

sented the masters in such emergency, and owed to them the same duty as the masters would have owed had they been personally present. Because the task of protecting the masters' property, which was for use in the prosecution of the regular work, was a different task than was contemplated by the contract of hiring, the masters were in no way relieved from the obligation which rested upon them of protecting their employés while engaged in such other or different task. In this case the plaintiff's intestate assumed the risks attending the work of protecting the masters' property, which were known to him, or which he ought to have known by the exercise of ordinary care and prudence. He also assumed the risk of the negligent acts of his co-employés. He had the right, however, to expect that he would be warned of any imminent danger which was known to the masters, but which was unknown to him, even although he could have acquired such knowledge by careful inspection. Applying these principles of law, which are elementary, to the facts disclosed by the evidence in this case, and, as we must assume, were found by the jury, have the appellants cause of complaint?

On the morning in question a fire started as a result of operating an engine by the gang of men engaged in excavating the State Ditch, almost directly opposite the point where the plaintiff's intestate was working on the canal with the pile-driver gang. Welch, the foreman of the gang working at the point where the fire started, ordered his men to aid in extinguishing the fire, as was his duty to do. His men being unable to put it out, he called upon Hannan, who was the boss over both him and Savage, to send additional help; and he (Hannan) sent Savage's men, as was also his duty. The fire spread rapidly, and in the direction of the pile of piles which were for use in the work being prosecuted by Seely's gang, of which plaintiff's intestate was one; and Seely, as was his duty, ordered his men to fight the fire. Hannan then assumed to give directions to all,— assumed to give directions to the end that the masters' property might not be destroyed by fire which started as the result of the work being done by the men over whom he had charge. While so giving directions and controlling the actions of the men, he was informed that the elm stump above referred to, and about which the men were working, was in immediate danger of falling, by reason of being burned through near the ground, and that the men would be injured thereby. He gave no heed to the warning, did not communicate the information thus received to plaintiff's intestate, or take any precautions to prevent injury to him which would naturally result from the fall of the stump, but permitted him to work in the blinding smoke, enveloped in steam, amid the noise and confusion, continuing his efforts to save his masters' property, wholly oblivious of the threatened danger of which the masters' representative might have known from observation, and of which he had been actually told and warned. Under the circumstances, it cannot be said that the masters failed in their duty, in that they did not provide a reasonably safe place for plaintiff's intestate to work in. The nature of the work was hazardous. The work of fighting the fire must of necessity be done where the fire was, and without any

opportunity to change the conditions or to make the place safe. This situation the plaintiff's intestate saw and knew, and assumed the risk. The first duty enumerated which the master owes to the employé was therefore discharged. The same may be said as to the second; but as to the third, as before said, the plaintiff's intestate at the time of the accident was engaged in a dangerous work; was under the direction of Hannan, the representative of the defendants. He (Hannan), as the evidence shows, had better opportunity to know the danger attending the extinguishment of the fire than the plaintiff's intestate; and in fact he knew, had been informed, that the stump was about to fall, and that the employés were in danger of being injured thereby, and he omitted to notify the plaintiff's intestate of the fact or of his peril. By such omission he failed to do his duty; failed to notify plaintiff's intestate of "impending danger of which he had knowledge, and of which the plaintiff's intestate had no knowledge, and could not have discovered by the exercise of ordinary care and prudence." For such failure the defendants are liable.

There is no force in the suggestion that because Hannan had no connection with the pile-driver gang, or with plaintiff's intestate, in the prosecution of the regular work, he did not represent the masters while the men were engaged in extinguishing the fire, or that while so engaged he became an employé merely. Seely had the right to request the men to assist in extinguishing the fire; so had Hannan; and it was the duty of the men to respond. Hannan was apparently given or assumed control, he being the highest in authority, and in attempting to protect the property he did only what the defendants might have done if present. Their obligation rested upon him. Had the defendants been personally in charge of extinguishing the fire, and had they known that the elm stump was about to fall in the midst of their employés, in time to have warned such employés of the danger, and failed to give such warning, in case injury resulted it will not be seriously contended that they would not be liable. It cannot be important that plaintiff's intestate, while fighting the fire, was under the direction of defendants' representative Hannan, rather than under the direction of their representative Seely, under whom the plaintiff's intestate performed his regular work. If there had been a pit within the triangle before described, the covering of which was known to Hannan to be unsafe, and he had requested plaintiff's intestate, or even a stranger, to carry the defendants' piles across it in order to save them from destruction, without informing the person so requested of the dangerous condition of the pit, and injury resulted without fault on the part of the person injured, the defendants would be liable; and it would be entirely immaterial to which gang of employés plaintiff's intestate belonged, or whether he belonged to either. Had Hannan directed the men to carry the pile of piles across the highway bridge, with the knowledge that such bridge was unsafe, if injury resulted the defendants would be liable, provided only that the person injured had no knowledge of the dangerous condition of the bridge; and so even although a careful inspection of the bridge by such person

might have disclosed its unsafe condition. Hannan represented the defendants in operating the excavating machines, having under his control a number of men for that purpose. In their operation an accident occurred which threatened the destruction of defendants' property, but not connected with the work under the charge of Hannan. He requested his own men and others, engaged in other and different work of the defendants, to aid in protecting such property. All responded, and Hannan assumed to direct their movements. A new and unexpected danger arose. The stump became so burned that it was liable to fall at any moment, and injury to the men was imminent. The danger was known to Hannan, but was unknown to the employés. Hannan neglected to warn them of the danger. The stump fell, and caused the death of plaintiff's intestate. For that neglect we think it clear that the defendants are liable. It is immaterial that some of the men before called by Hannan were engaged in other or independent work of the masters, and were under the direction of another foreman.

The jury were justified in finding upon the evidence that the plaintiff's intestate was free from contributory negligence. He will be presumed to have known that the work was dangerous, and that the same precautions could not be taken for his protection as when engaged in his ordinary work, and all the risks arising by reason of such facts he assumed. He did not, however, assume the risk of a danger which was known to the masters' representative, and of which he was not informed; and he had a right to rely upon the fact that it was the duty of the masters, under such circumstances, to inform him of such danger, and upon the belief that such duty would be performed.

The cases cited by appellants' counsel in no way conflict with the views above expressed. In Reinig v. Railroad Co., 49 Hun, 269, 1 N. Y. Supp. 907, the plaintiff was a changer of horses, and was employed for that purpose. Another employé of the defendant, named Eckert, directed the plaintiff to shovel snow from the roof of defendant's building. As he was descending to the ground in order to avoid a snowdrift, he jumped off the ladder onto the roof of another building, in which there was a skylight, of the existence of which he did not know, and through which he fell and sustained injury. It was held that the plaintiff assumed the risk attendant upon clearing the roof of snow; that, under the circumstances, the employer was not under obligation to inform him of the fact that there was a skylight upon the roof of an adjacent building. Nor did it appear in that case that the defendant's other employé had any authority to direct the plaintiff to shovel the snow from the roof. And it was held that the plaintiff could not recover. In that case, if Eckert had been charged with the duty of keeping the roof of defendant's building free from snow, and by reason of a sudden accumulation of snow the building was liable to fall, and to prevent it from falling it became necessary for Eckert to have assistance, and he had permitted the plaintiff, without warning, to go upon a defective skylight, of which he (Eckert) had knowledge, the facts would be analogous to the facts in the case at bar; and under such

circumstances the defendant in that case would have been liable. In Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115, it was held that where a servant, upon being requested to perform duties more dangerous and complicated than those embraced in his original contract of hiring, undertakes to perform such duties, knowing their dangerous character, he assumes the risk of such other or additional employment. This is a restatement.of the principle that a servant assumes all the risks of his employment, whether it be dangerous or otherwise, which are apparent or obvious, or which may be discovered by the exercise of ordinary care and prudence. In Wormell v. Railroad Co., 79 Me. 397, 10 Atl. 49, no other or different rule was adopted. In that case it was held that an employé who assumes to perform duties outside of his regular employment, at the request of the master, is held to assume the risks incident to those duties. As said in Railroad Co. v. Fort, 17 Wall. 553, the liability of the master for injuries to a servant, received while engaged in doing work outside of his regular employment, at the master's request, does not arise from the direction to do the other or different work which may be more dangerous, but from the failure on the part of the master to give proper warning of the attendant danger, where it is not obvious, or where the servant is of immature years or unable to comprehend the danger. In the case at bar, as we have seen, the plaintiff's intestate was rightfully directed to assist in the preservation of the defendants' property. The work required of him was dangerous,—obviously so,—and he assumed the risk attendant upon the performance of such new duties. He was chargeable, as in any other employment, with risks which were apparent, which were obvious, which, under the circumstances, considering the nature of the work he was doing, he could have discovered by the exercise of ordinary care and prudence. He had a right to assume, however, that the defendants, or, in their absence, their representative, who had requested such service, would inform him if any new and dangerous condition arose, of which they or their representative had knowledge; that they would use ordinary care and prudence to protect him against injury on account thereof.

Upon the whole evidence, we think the jury were justified in concluding that the defendants failed to discharge the duty which they owed to the plaintiff's intestate, because of the failure of Hannan to inform him that the elm stump in question was liable to fall, of which fact Hannan had notice, and of which the plaintiff's intestate had no knowledge, and that they were guilty of negligence; that the plaintiff's intestate was not, as matter of law, guilty of contributory negligence, because of the fact that he failed to discover the dangerous condition of the stump, notwithstanding such condition might have been discovered by him by careful inspection. None of the exceptions taken to the rulings.of the learned trial justice are of such a character as to require a reversal of the judgment. It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except SMITH and ADAMS, JJ., who dissent.

SMITH, J. (dissenting).   In Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, the plaintiff's intestate was engaged quarrying stone.   The stone was loosened by blasting.   After a blast it was found that the charge in one of the holes had not exploded.   The foreman of the defendant examined it, and found the fuse unconsumed, but failed to remove it.   He set other workmen to work drilling within 2 feet, and directed the plaintiff's intestate to drill some 20 or 30 feet distant.   The fuse caught fire.   The charge in the hole exploded, causing the death of the plaintiff's intestate.   It was held that the negligence of the foreman was not the negligence of the master, and the defendant was not liable.   The principle of this case seems further to be held in Miller v. Thomas, 15 App. Div. 105, 44 N. Y. Supp. 277. There the plaintiff, an employé of the defendant, was engaged, under the immediate direction of a foreman, in shoveling coal from a large pile, the surface of which was frozen.   A portion of the coal of the frozen surface, which had been undermined during the progress of the work, fell upon and injured the plaintiff.   It was held that the negligence of the foreman was not the negligence of the master, and that the risk was one assumed by the plaintiff.   See, also, Ulrich v. Railroad Co., 25 App. Div. 465, 51 N. Y. Supp. 5.   In the Cullen Case, supra, Justice Peckham, in writing for the court, says:

"Did the defendant discharge this duty of furnishing in the first instance a safe place for the servant to do his work?   The place was a cement quarry, and the work had proceeded so far that the business had to be conducted by blasting.   To blast at all is to encounter some danger, and hence, in this case, all the dangers incident to the working of the quarry under conditions requiring frequent blasts the workman took the risk of when he accepted employment in the quarry.   The danger of accident from the negligence of a fellow servant is part of the risk assumed."

Further on:

"It is not claimed that the master did not furnish a proper place to work in the first instance; that is, when the deceased was employed the quarry was as safe as any quarry is where frequent blasts are being fired off.   But the manner of the performance of each of the various details of the work, by which, as a whole, it is to be conducted, rested necessarily upon intelligence and care and fidelity of the servants to whom these duties are intrusted.   It can't be that every time a blast is exploded, and the men came back, the manner of their distribution for work was a duty of the master, and that the order of a foreman, mistakenly or negligently given, must be regarded as the order of the master in filling a duty to furnish a safe place to work in. It is, as it seems to me, a detail of the working or management of the business, the risks attending which have been assumed by the party taking employment."

Assuming, for the argument, that Hannan was the foreman of the plaintiff's intestate, they were both engaged in a hazardous undertaking, subject to constantly recurring hazards as the fire progressed. Suppose, for instance, a gang of men were sent to put out a fire where there were several trees falling; would it be claimed that the failure of the foreman to notify the men of the danger caused by the burning of the different trees would be the negligence of the master?   That danger, in my judgment, would be one so far incidental to the progress of the work as to be one of the risks assumed.   The failure of the foreman to notify the men of the recurring

dangers would be the negligence of a co-employé. The fact that there was only one tree which in the progress of the fire became dangerous cannot alter the rule of law. The negligence, then, in so placing the plaintiff's intestate without warning of the danger, was one of the risks assumed by the plaintiff's intestate. This case comes, I think, within the authority of the Cullen Case, supra, which would call for a reversal of this judgment.