STACIA CULLEN, as Administratrix, etc., Respondent, *v.*
FREDERICK O. NORTON, Appellant.

A master is not liable for negligence causing injury to a servant where the negligence complained of is the act of a co-servant, in his character as such; the fact that such co-servant is of a higher grade than the one injured is immaterial.

In an action to recover damages for the death of C., plaintiff's intestate, alleged to have been caused by defendant's negligence, it appeared that the decedent was employed by defendant as a laborer in his quarry and was engaged in drilling rock for blasting purposes, under the direction of D., defendant's foreman. After a blast, it was found that the charge in one of the holes had not exploded; D. examined it and found the fuse unconsumed, but failed to remove it; he set other workmen to work drilling within two feet, and directed C. to drill at a place some twenty or thirty feet distant. The fuse caught fire; the charge in the hole exploded, causing C.'s death. *Held*, that, assuming D. to have been negligent, his negligence was that of a fellow servant, for which the master was not liable; that C. took the risk of the dangers necessarily incident to the business when he accepted the employment; that when a blast was exploded and the men came back, the manner of their distribution for work was not a duty of the master, but one of the details necessarily resting upon the intelligence and care of the servants to whom that duty was intrusted, the risk attending which C. had assumed.

*Pantzar* v. *Tilly Foster Iron Mining Co.* (99 N. Y. 368); *Tendrup* v. *Stephenson Co.* (*Limited*) (121 id. 681); *Kranz* v. *L. I. R. Co.* (123 id. 1); *McGovern* v. *C. V. Railroad Co.* (Id. 280); *Hogan* v. *Smith* (125 id. 774), distinguished.

(Argued February 5, 1891; decided March 10, 1891.)

SICKELS — VOL. LXXXI.     1

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 24, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence.

The deceased was employed by defendant as a laborer in his cement quarry and was engaged in drilling rock for blasting purposes, under Patrick Doran, defendant's foreman. Prior to the accident, eleven holes had been drilled in a perpendicular piece of rock, were charged, fuse attached and fired, but ten of them exploded. Doran examined the unexploded hole, found the fuse unconsumed, but failed to remove it. The next morning he directed two of the workmen to drill holes in the rock, within two feet of the undischarged hole and at the same time ordered the deceased to drill twenty or thirty feet below. The exposed fuse shortly after in some way ignited the charge, this exploded, casting out rock, which fell on the deceased, killing him.

Further facts appear in the opinion.

*J. Newton Fiero* for appellant. The plaintiff must be deemed to have assumed the risks of the employment. (*Stewart* v. *N. Y., O. & W. R. R. Co.*, 28 N. Y. S. R. 220; *Gibson* v. *E. R. Co.*, 63 N. Y. 452; *Clarke* v. *Holmes*, 7 N. & H. 927; *Hickey* v. *Taafe*, 105 N. Y. 36; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 id. 274; *Shaw* v. *Sheldon*, 103 id. 667; *Williams* v. *D., L. & W. R. R. Co.*, 39 Hun, 432; *Hudson* v. *O. S. Co.*, 110 N. Y. 625; *Coger* v. *Hussey*, 112 id. 614.) Doran was in no wise the *alter ego* of the master, and defendant is not responsible for any carelessness or negligence of which Doran may be thought to have been guilty. (*Stringham* v. *Stewart*, 111 N. Y. 198; *Filbert* v. *D. & H. C. Co.*, 121 id. 207; *Neubauer* v. *N. Y., L. E. & W. R. R. Co.*, 101 id. 607; *McCosker* v. *L. I. R. R. Co.*, 84 id. 77; *Loughlin* v. *State*, 105 id. 159; *Riley* v. *O'Brien*, 53 Hun,

147; *Barringer* v. *D. & H. C. Co.*, 19 id. 216; *Kenny* v. *C. S. S. Co.*, 20 J. & S. 434; *Hart* v. *N. Y. F. D. D. Co.*, 16 id. 468; *Malone* v. *Hathaway*, 64 N. Y. 5; *Brick* v. *R.*, etc., *R. R. Co.*, 98 id. 211; *Shiner* v. *Russell*, 6 N. Y. S. R. 78; *Webber* v. *Piper*, 109 N. Y. 497; *Monnaghan* v. *N. Y. C. R. R. Co.*, 45 Hun, 113; *Chapman* v. *E. R. Co.*, 55 N. Y. 583; *Scott* v. *Sweeny*, 34 Hun, 292; *Slatterly* v. *N. Y., L. E. & W. R. R. Co.*, 21 N. Y. S. R. 552; *Beilfus* v. *N. Y., L. E. & W. R. R. Co.*, 29 Hun, 556; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 372; *Wadell* v. *Simpson*, 112 Penn. St. 567; *R. C. Co.* v. *Roby*, 115 id. 364.) This is not a proper case to invoke the principle that the master is bound to furnish a safe place to work, for the reason that aside from the neces- sarily dangerous character of the business, the place was a safe one so far as the master was concerned; and if made unsafe, it was the fault of persons employed to direct its ordinary operations, and Doran was not the agent of the master, nor was the unsafe condition brought home to the knowledge of the master. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 375; *Probst* v. *Delamater*, 100 id. 266; *Bailey* v. *R.*, etc., *R. R. Co.*, 49 Hun, 379; *Stringham* v. *Hilton*, 111 N. Y. 188; *Byrnes* v. *N. Y., L. E. & W. R. R. Co.*, 113 id. 251; *Ford* v. *L. S. R. R. Co.*, 117 N. Y. 638; *Jones* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 364; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 266; *Warner* v. *E. R. Co.*, 39 id. 468; *Faulkner* v. *E. R. Co.*, 49 Barb. 324; *Malone* v. *Hathaway*, 64 N. Y. 5; *Degroff* v. *N. Y. C. R. R. Co.*, 76 id. 125; Wharton on Neg. §§ 211, 212, 232; *Chapman* v. *E. R. Co.*, 55 N. Y. 579; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 id. 356; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 id. 245; *Holis* v. *N. Y. C. & H. R. R. R. Co.*, 25 N. Y. S. R. 528; *Cahill* v. *Hilton*, 106 N. Y. 512; *Arnold* v. *D. & H. C. Co.*, 6 N. Y. S. R. 388; *Devlin* v. *Smith*, 89 N. Y. 470.) The case should not have gone to the jury, since the plaintiff's case on all the evidence is as consistent with the absence as with the existence of negligence; and, therefore, negligence is not proven. (*Tracy* v. *P. C. Co.*, 67 How. Pr. 156; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; *McCaf-*

*frey* v. *F. S. S. R. R. Co.*, 47 Hun, 404; *Hunter* v. *N. Y. C. & H. R. R. R. Co.*, 116 N. Y. 624; *Searles* v. *M. Co.*, 101 id. 661; *Taylor* v. *City of Yonkers*, 105 id. 209; *Dobbins* v. *Brown*, 119 id. 188; *Hayes* v. *F. S. S. R. R. Co.*, 97 id. 259; *Claflin* v. *Meyer*, 75 id. 266; *Dwight* v. *G. Ins. Co.*, 103 id. 358.)

*David M. De Witt* for respondent. The general rule that the common master is not liable for an injury to a servant caused by the negligence of a co-servant, is not invaded by the subrule that where the offending servant represents *pro hac vice* the master, his negligence is imputable to the master. (*Fuller* v. *Jewett*, 90 N. Y. 46; *Mann* v. *D. & H. C. Co.*, 91 id. 495; *Noyes* v. *Smith*, 28 Vt. 59; *Ryan* v. *Fowler*, 24 N. Y. 410.) In the present case, the foreman having charge of the excavation of the tunnel was clothed with the authority of the master in the direction and control of the men and in the operation of that branch of the common employment; and, therefore, he represented the master in the discharge of the correlative duties the master owed to the men. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; Wood on Master & Servant, § 438; *Grizzle* v. *Frost*, 3 F. & F. 622; *Ford* v. *F. R. R. Co.*, 110 Mass. 240; *Somerville* v. *Gray*, 1 Macph. 768; *Hardie* v. *Addie*, 30 Jur. 247; *Morton* v. *E. R. R. Co.*, 2 Macph. 589.) When the foreman commanded his two subordinates to plant their drilling machine and begin to drill the rock in the immediate vicinity of a full-charged unexploded blast, the dangerous condition of which was well known to him, and then placed within the circle of danger a third subordinate, the respondent's intestate, he was acting not *qua* servant, but *qua* master, and such an act, under the circumstances found by the jury, constituted a breach of the duty of the master not to subject his servants to extraordinary risks and to furnish a place to work in as safe as is consistent with the customary operations of the work. (*Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 332; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 368; Wood on Master & Servant, §§ 349, 448; *R. R.*

*Co.* v. *Fort*, 17 Wall. 553; *Grizzle* v. *Frost*, 3 F. & F. 622; *Hickey* v. *Taffee*, 105 N. Y. 26, 36; *Anthony* v. *Leeret*, Id. 600; *Benzing* v. *Steinway*, 101 id. 547.) Conceding that Doran was acting *qua* master, then as to whether or not his acts constituted negligence was a question of fact for the jury, and was submitted to them as such by the court. (*Abel* v. *D. & H. C. Co.*, 103 N. Y. 581.) The jury had a right to find from the evidence that the explosion which caused the death of the respondent's intestate was the direct consequence of the negligent act of the foreman in setting men to work with the drilling machine in such close proximity to the loaded blast. (*Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562, 568; *Ring* v. *City of Cohoes*, 77 id. 83, 88, 90; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 id. 566.) Contributory negligence of the servants working the drill, co-operating with the negligence of the defendant, will not relieve the latter from liability. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Stringham* v. *Stewart*, 100 id. 516.) The question of contributory negligence on the part of the plaintiff's intestate was, under the facts of this case, a question for the jury, and was properly submitted to them by the justice. (*Plank* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 607; *Hawley* v. *N. C. R. R. Co.*, 82 id. 370.)

PECKHAM, J. Assuming Doran to have been negligent, is the evidence in the case of such a nature as to show that the defendant was responsible for it, or was the negligence that of a fellow servant of the intestate? I think it was the latter. A master is bound to furnish reasonably safe and suitable implements for the use of the servant, and a reasonably safe place of employment, considering the nature of the employment itself. There is very little room for disagreement as to the principles of law in this class of cases, but the difficulty lies in their application to the facts of each special case.

Did the defendant discharge this duty of furnishing in the first instance a reasonably safe place for the servant to do his work? The place was a cement quarry, and the work had

proceeded so far that the business had to be conducted by blasting. To blast at all is to encounter some danger, and hence, in this case, all the danger incident to the working of the quarry under conditions requiring frequent blasts, the workman took the risk of when he accepted employment in the quarry. The danger of accident from the negligence of a fellow workman is part of the risk assumed.

The master was liable for the act of Doran in placing the deceased at work where he did, provided such act was of a character which the master was required to perform as master. This is the principle decided in *Crispin* v. *Babbitt* (81 N. Y. 516), and it has never been receded from in this court. If Doran acted as master, the defendant is liable, while if he acted in his capacity as an employe and not as a representative of the master, his negligence does not rest upon the master.

The quarry was the place where the work was to go on, and the master was bound to make it a reasonably safe place for such work, considering its character and the necessarily dangerous nature of the work itself. For the manner in which the persons employed in the quarry should themselves perform their work, the master was not liable. It is not claimed that the master did not furnish a proper place to work in the first instance; that is, when the deceased was employed, the quarry was as safe as any quarry is where frequent blasts are being fired off.

But the manner of the performance of each of the various details of the work by which, as a whole, it was to be conducted, rested necessarily upon the intelligence and care and fidelity of the servants to whom these duties were intrusted. It can't be that every time a blast was exploded and the men came back, the manner of their distribution for work was a duty of the master, and that the order of a foreman, mistakenly or negligently given, must be regarded as the order of the master in filling a duty to furnish a safe place to work in. It is, as it seems to me, a detail of the working or management of the business, the risks attending which have been assumed by the party taking employment.

The case of *Pantzar* v. *Tilly Foster Iron Mining Co.* (99 N. Y 368) was entirely different.   The master was there held liable because, through the superintendent, it placed the plaintiff in a position of danger, not necessarily connected with or part of the conduct of the general work itself for which plaintiff was employed, and which danger was not caused by any negligent act or omission of a fellow servant.   The plaintiff, while working in the pit of the mine, was injured by the fall of a mass of rock from an overhanging cliff, not caused by the negligence of any workman, and not a natural or necessary part of the danger arising from the working of the mine itself.   The superintendent and foreman had been warned of the danger before the plaintiff went to work at the place where he was injured, and they took no precautions to support the rock while the men were at work under it, although it was entirely practicable to do so.   We held in such case, the master failed to furnish a reasonably safe place to the plaintiff to continue his work.

In this case it is the ordinary one of choosing a method, a time and a place for continuing the work in the quarry, and this involved questions of judgment and discretion committed in this instance it would seem to Doran.   He, it may be conceded, mismanaged or misjudged the matter, and after placing the deceased at work, negligently or improperly placed others at work too near the hole in which the powder had not exploded, and the consequence was this most unfortunate accident.   The accident resulted from a negligent act done in the very course of the work and by one of the fellow workmen of the deceased. The negligent act was a part performance of the work itself, the risks of which the deceased had assumed.   The master had provided a competent and experienced foreman, who had been in his employment a number of years, and he was not chargeable with the consequences of a place for work made dangerous only by the carelessness and neglect of a fellow servant (*Hussey* v. *Coger*, 112 N. Y. 614–618), although that fellow servant happened to be the foreman.

The case of *Tendrup* v. *The Stephenson Co.* (*Limited*),

decided in this court in 121 N. Y. 681, without an opinion, was a very close one — a border case, so to speak, and not one which should be amplified in the slightest degree. The idea upon which its affirmance was founded in this court was that the ladder leading from an upper to a lower part of the place where the plaintiff was working was never sufficiently fastened down to make the place a safe one to work in, because of the readiness with which it could be removed without noise or notice. Hence it could be said the master had failed to furnish at all a safe place to work in.

The case of *Kranz* v. *Long Island Railway Co.* (123 N. Y. 1) is not in point. There the trench was to be dug by others, and in it the plaintiff was to go for the purpose of cleaning out certain water-pipes. The defendant owed a duty to see to it that the place that the plaintiff was sent to work in should be reasonably safe. Here the decedent and the other men in the quarry were engaged therein, and by their blasting they were continually changing the conditions of the quarry, and its dangerous conditions were added to by the negligence of this foreman in carrying out the general purpose and design of the work in which they were all engaged, and he acted there as a fellow workman and not as master or in place of the master.

In *McGovern* v. *Railroad* (123 N. Y. 280) the decedent was sent into the bin to discover why it was that the grain had ceased to flow through the hopper at the bottom of the bin and where the difficulty was. It was known that there was a tendency in grain to heat, and when heated it would sometimes stick to the sides of the bin and cease to run out. When this was the case it was dangerous to attempt to enter the bin from the trap-door in the bottom, as the grain might be detached, fall down, close the trap-door, and smother anyone in the bin. The work could have been done from the top of the bin without danger. This court held there was evidence to go to the jury on the question whether the defendant had discharged the duty which it owed its servants, and whether it was not negligent in ordering its servants to enter a place obviously

dangerous without first making proper inspection. Under the circumstances the place (the bin) was obviously danger-ous to enter at all from below and its danger did not in any way depend upon the manner in which the work should. be conducted by fellow servants after they entered the bin. The danger consisted in entering it at all through this trap-door. The court said that it was the duty of the master to adopt all reasonable precautions to shield the servant from the danger he might be exposed to in the place assigned him for labor before requiring him to occupy it. This remark was made in reference to ordering him to enter an obviously dan-gerous place through this trap-door, and when it was not at all necessary to enter from below. It was not at all dangerous unless there was grain in the bin, and then it was dangerous only for the time being and because of the known habit of the grain to heat and stick to the sides of the bin. It seems plain that the risk thus run by the decedent was no necessary, natural or usual part of the general business which he was employed to do, and the risks of which he assumed when he entered the defendants' employment. The danger did not arise out of the prosecution of his work or the prosecution of the work of his fellow workmen, and the place was only made dangerous from this temporary cause, which was entirely dis-connected from the ordinary prosecution of the work; it was in substance an order from the master to occupy a place of danger which the jury might say he had not sufficiently, that is reasonably guarded against, and for the injuries resulting the master should be held liable. The case at bar is not similar in these respects. The facts already recited show the difference, and hence the *McGovern* case does not apply.

The case of *Hogan* v. *Smith* (125 N. Y. 774) is the latest example of the application of the law relating to master and servant in this particular.

The defendant had been held liable below because of his alleged failure to furnish as master a reasonably safe place for the servants to do their work. We held that the place which the master furnished was the ship itself, constructed in the usual

way, which became unsafe, not by reason of any careless or negligent plan or manner of construction, but solely from the way in which the longshoremen did their work. The injury, it was said, happened not from any inadequate supply of boards to build the "stool," but from the negligent manner in which the workmen used them, and we reversed the judgment against the defendant. So in the case at bar. The master furnished the mine as a place for labor, and it was solely on account of the manner in which the foreman, a fellow servant, performed the work or directed it that the accident happened, and happened in the course of the performance of the very kind and character of work which the plaintiff's intestate took the risk of by accepting employment. I think this case comes within the clear principle of the *Crispin and Babbitt* case (*supra*), which remains in full vigor and life in this court. The same principle has been lately reiterated in *Loughlin* v. *State of New York* (105 N. Y. 159).

The judgment should be reversed and a new trial granted, costs to abide event.

All concur, except RUGER, Ch. J., and O'BRIEN, J., dissenting.

Judgment reversed. _____