(25 App. Div. 234.)

CAPASSO v. WOOLFOLK et al.

(Supreme Court, Appellate Division, First Department. January 21, 1898.)

1. APPEAL—REVIEW—DISMISSAL OF COMPLAINT.

In considering the ruling of the court below dismissing a complaint, the appellate court must accept in the most favorable light to the plaintiff all the evidence bearing upon the controverted issues of fact, the question presented being whether or not, so viewing the testimony, there was anything to go to the jury.

2. DISMISSAL—CONTRADICTORY EVIDENCE.

Where, upon a trial, the evidence for the respective parties, upon a crucial question of fact, is contradictory, though that on behalf of plaintiff is vague and general, and upon the attempt of plaintiff's counsel to call out specific details the trial judge interprets the testimony already in as specific and directed to the exact point in dispute, and announces that there is no use in elaborating it further, plaintiff's counsel is thereby justified in pursuing the inquiry no further, and a dismissal of the complaint cannot be sustained on the ground that the testimony was too vague to raise a conflict.

3. INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

Where an order to a servant to go to work at an admittedly dangerous place is given to him by the master himself, who has personally taken charge of the direction of his servants, the servant is justified in believing that the master had personally seen to it that all the precautions had been taken and protection given which were customary, usual, and necessary to be afforded by a master to a servant in doing such work, and the master cannot escape liability for a resulting injury by showing that the absence of due precaution was due to the negligence of a fellow servant.

Action by Arcangelo Capasso against Edward G. Woolfolk and Charles Sillery. Verdict for defendants. Motion for new trial on exceptions ordered to be heard in the first instance at the appellate division. Exceptions sustained.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

John M. Gardner, for appellant.

Perry D. Trafford, for respondents.

PATTERSON, J. This is an action to recover damages for personal injuries sustained by the plaintiff, and alleged to have been caused by the negligence of the defendants. On the trial witnesses were examined on behalf of both the plaintiff and the defendants, and, at the close of all the proofs, the complaint was dismissed, but for what specific reason does not appear. The motion was made on various grounds, namely: That no negligence was proven on the part of the defendants; that it had not been shown that the plaintiff was free from contributory negligence; that the accident which happened to the plaintiff was caused by one of the risks of the employment he had assumed; that, if there were negligence on the part of any other than the plaintiff himself, it was the negligence of one of his fellow servants; and that it was affirmatively shown that there was no negligence on the part of the defendants. A request was made by the plaintiff to go to the jury upon the question of the personal supervision of the defendants, upon that of the defendants' negligence, and on that of the absence of contributory negligence on the part of the plaintiff, and on all the evidence in the case. The trial judge refused to allow the case to go to the jury, to which the plaintiff excepted, as he did also to the granting of the motion to dismiss the complaint. Those exceptions were directed to be heard, in the first instance, before the appellate division.

In considering the ruling of the court below dismissing the complaint, we must accept in the most favorable light to the plaintiff all the evidence bearing upon the controverted issues of fact (Rehberg v. Mayor, etc., 91 N. Y. 137; Galvin v. Mayor, etc., 112 N. Y. 223, 19 N. E. 675; Stuber v. McEntee, 142 N. Y. 200, 36 N. E. 878; Pratt v. Insurance Co., 130 N. Y. 206, 29 N. E. 117; Weil v. Railroad Co., 119 N. Y. 152, 23 N. E. 487), and the question involved here is whether or not, so viewing the testimony, there was anything to go to the jury. Stating the case, therefore, in its most favorable aspect to the plaintiff, upon the proofs the following facts were made to appear: The defendants were contractors, and the plaintiff was employed by them as a laborer. They were engaged in making a cut through rock for the passage of trains on the New York, New Haven & Hartford Railroad. That work was done by blasting. The blasts were made during the daytime by workmen who were called the "day gang." The débris or fragments of rock thrown out by the blasts were removed at night by men who were called the "night gang." On the afternoon of the 29th of May, 1894, a blast was set off which dislodged some four or five hundred tons of rock, which was left to be removed

by the night gang. It was shown that it was customary and was considered necessary, after such a blast was had, to have an examination made at the place of the explosion, in order to ascertain whether it would be safe for the night gang to work in the removal of the débris. It appears that the plaintiff, being one of the night gang, went to work to aid in the removal of this débris; that it was dark; that he was working by lamplight; and that, while thus engaged, a large piece of rock fell from above upon him, and injured him so severely that his foot had to be amputated. The negligence attributed to the defendants is that no inspection or examination was had after the explosion to ascertain the effect of that explosion. The claim of the plaintiff is that it was the duty of the defendants to protect him in the performance of his work as one of the night gang; that that protection was to be afforded by an inspection of the result of the blast, to ascertain whether there were any overhanging or loose fragments of rock not fully dislodged by the explosion, and which might fall upon those working in removing the refuse of the blast. The evidence established facts which showed the existence of the duty referred to. The work of the removal of the débris was dangerous. One of the defendants' witnesses testified to the necessity of making the inspection referred to, and said it was customary to do it every day, and, furthermore, testified that he himself made the inspection when the blast went off, and his evidence tended to show that during that inspection he examined the very piece of rock that it was claimed fell upon and injured the plaintiff. Thus it appears that the plaintiff was engaged at work in a dangerous place; that it was the duty of the master to inspect the place or cause it to be inspected by a competent person; and that such inspection was a customary and usual thing. The omission to make the inspection, it is claimed, would be negligence. It appeared by the testimony of one of the witnesses for the plaintiff that no inspection was made, and there is a direct issue upon that subject arising upon the evidence. The witness last referred to testified as follows:

"Q. Now, after the blasting occurred or went off, what did they do, if anything, in regard to the examination of the rocks, before sending the men to work? A. The contractors never did anything; they never sent anybody around. Q. Now, just describe to the court and jury what was done after each blast at this place. The Court: He may say what was done after this blast. Q. Now, describe it very carefully. The Court: As I understand it, he says that nothing was done. Now, what is the use of going over it?"

It is true that it may be said that the testimony of this witness as reported, so far as the particular questions and answers above quoted are concerned, is vague, and related to the general neglect of the contractors to make any examination of the rocks before sending night gangs to work. But that is not the proper view of the testimony. The court understood the witness to swear that no examination was made after the particular blast the subject of consideration here. The counsel for the plaintiff asked the witness to describe very carefully what was done, and the court proclaimed that the witness had already answered the question, and had said that nothing was done. That, therefore, was the condition of the testimony upon that particular sub-

ject; and the plaintiff's counsel was justified in not pursuing the inquiry any further, after the deliberate statement of the court that the witness had testified fully on the subject. We should take that declaration of that court as stating the condition of the proof on that matter, as that proof was before the jury on the trial; for it would be unjust to deprive the plaintiff of the benefit of that testimony after the court had solemnly declared that it was in the case and before the jury. Thus, we have, upon the issue of negligence, conflicting testimony as to what was done or omitted in the way of inspection, and the court should not have taken the case away from the jury on the question of negligence, unless there were other features of the case which required the granting of the motion for a nonsuit. Contributory negligence was not shown as matter of law, arising from all the facts of the case. The court would not have been justified in dismissing the complaint on that ground. But it is urged that, even if there were negligence on the part of the defendants, it was the negligence of a fellow servant. That question is not a decisive one on this appeal. The plaintiff, according to his own testimony, was directed to go to work, at the time at which he was hurt, by Mr. Sillery, one of the defendants. It was an order that came, therefore, from the master himself, and the servant would be justified in believing that when he was ordered by the master to go to work, at a place which concededly involved danger, the master had seen to it that all the protection was given to him which was customary and usual and necessary to be given by a master to a servant in doing such work, and therefore, when the master himself personally directed the plaintiff to go to work, and personally took in charge the direction of his servants, that then he himself personally had seen or knew that the examination of the overhanging rock had been made. The case is therefore unlike Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, and Loughlin v. State, 105 N. Y. 159, 11 N. E. 371, which are relied upon by the respondents. The negligence of fellow servants who gave directions was the test in those cases. In Cullen v. Norton the foreman was a fellow servant. Loughlin v. State turns upon the same fact. Here the negligence is not in the omission of the foreman of the work to inspect, but it is in the employer himself setting his servant to work at this known dangerous place without satisfying himself or knowing that the inspection had been made. Whether, on a retrial of the case, negligence of the employer may be shown, is a matter now of pure speculation; but, taking the case in its most favorable aspect to the plaintiff, as we are bound to do, we must assume that no inspection was had, and that the defendant Sillery, either with or without knowledge of the omission, set his servant to work; and it was his duty to know, when he gave the order to the plaintiff, that the place was safe, so far as it could be made safe by an examination which was to precede the beginning of work by the night gang. This servant took only a risk such as was incident to his employment after the master had performed the duty of having a preliminary inspection made of the condition of the rock after the blast, and he had a right to rely upon the master having discharged that duty.

It is unnecessary to consider the question as to whether the fore-

man at work at this pit is to be regarded in the light of a fellow servant. If the plaintiff's testimony is true, the case stands upon the negligence of the master himself. It was he who ordered the plaintiff upon the work, and when he gave that order he took the responsibility connected with the omission to do that particular act for the safety of the servant which the servant had the right to rely upon as having been done before he was put to work. In that aspect of the case, we think it should have gone to the jury on the disputed question of fact as to whether or not the preliminary examination of the rock, after the blast, had been made.

The exceptions should be sustained, and a new trial ordered, with costs to appellant to abide the event. All concur.