# Supreme Court Decisions.

## NEGLIGENCE OF EMPLOYE RESULTING IN INJURY.

### THE KELLY ISLAND LIME & TRANSPORT CO. v. PACHUTA, ADMINISTRATRIX.

69 Ohio State—Decided, February 2, 1904.

*Employer not Liable to one Servant—For Negligence of Another Servant—When Both are in Common Service—And one does not Control the Other—Laborer in Limestone Quarry Injured by Blast —No Warning by other Workmen—Law of Master and Servant.*

1 An employer is not liable to one servant in his employ for the negligence of another servant, when both are engaged in a common service, and no power of control is given to the one over the other, where the negligence complained of consists only in the non-performance of some act or duty incidental to the general employment and to the proper and safe conduct and prosecution of the business in which both are engaged.

2. P was employed by the plaintiff in error as a laborer in its limestone quarry. S and O were employed as workmen in the same quarry; neither had any authority or control over the other, but the three were all under the immediate direction and control of the same foreman, and were all engaged in the same common enterprise and common business, viz., that of quarrying and getting out limestone. In working and operating said quarry, one of the methods adopted for breaking up and getting out the stone was that of "battery blasting." S was charged with the duty of preparing and firing these battery blasts and of giving notice and warning to the other workmen in the quarry whenever such blast was about to be exploded. O assisted S in the preparation of these battery blasts, and it was the custom for one or the other of these men to give warning or notice. P, while working in said quarry, was, because of the failure to give him proper warning, struck by a stone thrown out by the explosion of a battery blast and received injuries from which he died. *Held:* That they were fellow servants, and that the negligence of S in failing to give P warning, was the negligence of a fellow servant for which the employer is not liable.

Error to the Circuit Court of Ottawa County.

This action was originally brought in the Court of Common Pleas of Ottawa County by the defendant in error, Anna Pachuta, as administratrix of the estate of her deceased husband, John Pachuta, against the plaintiff in error, The Kelly Island Lime & Transport Co., to recover damages for the alleged wrongful death of her said husband, caused, as she averred in her petition, by the negligence of said company.

The trial in the common pleas resulted in a verdict and judgment in favor of the plaintiff—the defendant in error here—for $3,000. This judgment was affirmed by the circuit court. Other facts sufficiently appear in the opinion of the court.

*Squire, Sanders & Dempsey* and *S. P. Alexander,* for plaintiff in error.

*William Gordon* and *John F. McCrystal,* for defendant in error.

CREW, J.; SPEAR, DAVIS, SHAUCK and PRICE, JJ., concur.

At the time of the injury to John Pachuta which resulted in his death, and gave rise to this action, he was employed by the plaintiff in error as a quarryman in its limestone quarry at Marblehead, in Ottawa county, Ohio. He had been in the employ of and had worked for said company for about twenty years, and for about nine years had been so employed in the company's quarry at Marblehead. There were in this quarry two ledges of rock, an upper ledge known and designated in the evidence as the "flux ledge" and a lower ledge known as the "limestone ledge" or "lower rock ledge." These ledges were from nine to twelve feet in height and the upper or flux ledge, which was furthest south, was about five hundred feet distant from the lower or limestone ledge. At the time he was injured, the deceased, John Pachuta, with other workmen, was working upon this lower or limestone ledge and was engaged in quarrying and breaking up and removing stone from said quarry. The method employed in this quarry for loosening and getting the stone was that of blasting—holes were drilled short distances apart along these ledges of rock, these holes were loaded or charged with powder or dynamite and the charge was then exploded by means of an electric battery. This was

called "battery blasting," and· the usual ·effect of ·such blast was to sever the edge of the ledge of rock along which the blast was placed, from the main body, after which the rock so severed or blown off was broken up by the workmen into smaller pieces, and when so broken up and prepared it was then taken to the kiln for burning, or to railroad cars for shipment. The blasting at this quarry was and for several years had been in the immediate charge of one John Schaffer, whose duty it was to superintend the preparation and firing of these "battery blasts" and to give warning and notice to the other workmen in the quarry when a blast was about to be fired that they might seek a place of safety before such blast should be discharged. Schaffer had as an assistant in the preparation and firing of these battery blasts, a man by the name of Onko, and in obedience to instructions issued by the general quarry foreman, Mr. Fillabaum, it was usual for one or the other of these two men—Schaffer or Onko—after a blast had been prepared and was ready to be discharged, to give notice to the other workmen in the quarry that a blast was about to be fired, and this they did, according to the custom of the quarry, by going near to such other workmen and calling out the word "fire," after which sufficient time was allowed them to get under cover or to withdraw to a place of safety before the blast was discharged. Schaffer, who in the language of the quarry was known as the "powder man," had no authority or control over Pachuta or the other workmen employed in said quarry; but Schaffer, Onko and Pachuta were each and all of them directly and immediately under the same foreman, Mr. Frank W. Fillabaum. On the day of and immediately prior to the injury received by Pachuta, which resulted in his death, a number of holes had been drilled in the upper or flux ledge of said quarry and these holes had been loaded with dynamite. After the blast had been so prepared Schaffer sent Onko to the lower ledge to notify the men working there, one of whom was Pachuta, that a blast was about to be discharged. Onko went along the lower ledge and gave the usual warning by calling out "fire;" several of the workmen heard the warning and withdrew to a place of safety; others claimed that they did not hear it. Pachuta, who is not shown to have heard the warning, remained where he was then at work, and when the blast was discharged he was struck by a stone thrown out by said blast and

received injuries, from the effects of which, four days later, he died. To recover damages for causing his death, this action was brought by his administratrix against the plaintiff in error, The Kelly Island Lime & Transport Co., she alleging in her petition that his death was caused by, and resulted from, negligence on the part of said company. While acts of negligence other than of a failure to give notice were charged by defendant in error in her petition, no claim was made that the company did not exercise due care in the selection of its servants, nor is their any charge that such servants were incompetent; and upon the undisputed facts of this case no right of recovery exists in her favor, and no liability on the part of plaintiff in error is shown, unless such right exists and such liability arises from a failure to give notice or warning to Pachuta, that a battery blast was about to be exploded. Assuming then, as we do in this case, that from the evidence the jury was authorized to find that no such notice was given him and that the death of Pachuta resulted from, and was in consequence of, the failure of Schaffer to give. or cause to be given, proper notice of the intended discharge of said blast, the only question we have thought it necessary to consider upon this record, is whether such neglect and failure upon the part of Schaffer, is in law imputable to the plaintiff in error, The Kelly Island Lime & Transport Co., who was the common employer of Schaffer, Onko and Pachuta, and whether such company is liable for, and legally chargeable with, the results of such negligence. The determination of this question involves a consideration of the question as to whether or not Schaffer, Onko, and the deceased, John Pachuta, were fellow servants. The general rule that a common master can not be made responsible for injuries resulting to a servant from the negligence of a fellow servant, is a principle now well established in almost all jurisdictions. This rule in Ohio was recognized and announced by this court, almost half a century ago, in the case of *Railroad Co.* v. *Keary,* 3 Ohio St, 201, and has since been followed by a long and uninterrupted line of decisions to the same effect.

It remains then only to determine whether under the rule in Ohio, defining and prescribing who shall be deemed and held to be fellow servants, John Pachuta was a fellow servant, engaged in a common employment with the parties Schaffer and

Onko, who had charge of the battery blast at the time Pachuta was injured.

At the time of the accident these persons were all engaged in the common employment of getting out stone from this quarry— Schaffer and Onko in blasting the stone off from the ledges, and Pachuta after it was so blown off, in breaking it into smaller pieces and thus preparing and making it ready for the kiln, or for shipment. Although working in different parts of the same quarry their work was in connection with each other and had relation to the same common end, that of getting out the stone, and their co-operation was necessary to bring about that result. They were all employed by and were serving the same master, neither was in a position of subordination to, or subject to the order and control of the other, but they were each and all of them under the immediate control and authority of the same foreman, Frank W. Fillabaum, and were all engaged in the same general work. In Ohio the test to be applied in determining whether a particular servant is a vice-principal or a fellow servant, except in certain cases where the rule has been modified by statute, is whether or not he has been placed by his employer in a position of control or authority over his co-employe. That this, rather than the nature and character of the work being done, is the controlling and governing test in this state, would seem to be well settled by the following authorities: *Railroad Co.* v. *Keary,* 3 Ohio St., 201; *Railway Co.* v. *Lewis,* 33 Ohio St., 196; *Railway Co.* v. *Ranney,* 37 Ohio St., 665. In *Railroad Co.* v. *Keary,* we find the following syllabus:

"But a principal is not liable to one servant in his employ for injuries resulting from the carelessness of another servant, when both are engaged in a common service, and no power or control is given to the one over the other. They stand as equals to each other, and are alone liable for the injuries they may occasion.

"But when the failure occurs in that branch of the service committed by the principal to the subordinate servants, it is their fault, and not that of their employer, and a breach of their obligations, and not his; and where they enter the service with a knowledge that several are to be engaged, each takes upon himself the hazards of the employment including that of negligence by fellow-servants, and public policy requires that they should be interested in exercising supervision over each other."

In *Railway Co.* v. *Lewis, supra,* Day, J., in the opinion, says, at page 199:

"A master, whether an individual or a corporation, is responsible to his servants for his own negligence, but not for that of their fellow servants. This is the general rule, subject, however, to the modification recognized in the jurisprudence of this state, that where one servant is placed in a position of subordination to, and subject to the orders and control of another servant of a common master, and the subordinate servant, without his fault, is injured through the negligence of the superior servant while both are acting in the common service, the master is liable therefor. *P., Ft. W. & C. Ry. Co.* v. *Devinney,* 17 Ohio St., 197; *Berea Stone Co.* v. *Kraft,* 31 Ohio St., 287."

Again, in the case of *Railroad Co.* v. *Margrat,* 51 Ohio St., 130, Judge Bradbury, in discussing the question of who are fellow servants, at page 141, says:

"Was the engineer in charge of this locomotive a fellow servant of Margrat for the consequences of whose negligence the company was not liable to the latter? Margrat and the engineer in charge of the locomotive that struck him were in the employment of the same master. The former was a brakeman on one train, while the latter was an engineer on another train of the same company. Neither had been clothed with authority over the other, therefore the relation of superior and subordinate between them had not existed in fact. In the absence of such relation, their common employer would not be liable to either for injuries received through the negligence of the other, unless the rules of the law upon the subject heretofore announced by this court have been abrogated."

In the light of these authorities, upon the undisputed facts in this case, the conclusion that Schaffer, Onko and Pachuta were fellow servants, is inevitable. It is, however, contended in this case, by counsel for defendant in error, that because of the nature of the work a duty was by law imposed upon the master, The Kelly Island Lime & Transport Co., in respect to furnishing a safe place for its workmen, and that the duty so imposed included the duty and obligation to give notice and warning to such workmen whenever a blast was about to be discharged in said quarry. That this duty on the part of the master was an *absolute* duty and that it could not be delegated by the master so as to absolve him from liability in case of the failure to perform such duty by the person to whom the same might be dele-

gated. We need not here enter upon a discussion of the rule as to the liability of an employer for failure to furnish a "safe place," inasmuch as such rule can have no application to a case such as we are now considering. In this case the deceased, John Pachuta, at the time he was injured, was working in an open quarry, engaged with other workmen in getting out, quarrying and removing stone therefrom. The quarry itself was not an unsafe place, and if it became so it was only by reason of the negligence of a fellow servant engaged in a common employment with decedent and during the progress, and while performing a part, of the work incident to such common employment. To such condition of facts the rule of "safe place" can in Ohio have no application (*Railroad Co.* v. *Webb,* 12 Ohio St., 475; *Coal & Mining Co.* v. *Admr. of Clay,* 51 Ohio St., 542; *Cullen* v. *Norton,* 126 N. Y., 1). In support of the claim that the dangerous character of the work and the obligation of the master to maintain a safe place, imposed upon the plaintiff in error the absolute duty of giving actual notice to the workmen in the quarry before the discharge of each battery blast.

Counsel for defendant in error cite us to the case of *Mooney* v. *Belleville Stone Co.*—a New Jersey case—found in American Negligence Reports, Vol. 4, page 195, where it is held upon a state of facts very similar to those in the case at bar, that the giving of warning was a duty owed by the employer to the employes, and the failure of the foreman of a gang of workmen to perform this duty carefully, was imputable to the defendant as employer. This case is directly in point. But the rule therein laid down can not we think, be taken and accepted as the law in Ohio. In holding the master liable in this case, the New Jersey Court of Appeals does so upon the theory that the duty of the master to maintain a "safe place" is imperative and absolute; and that such duty is violated and the master made liable if through the negligence of a fellow servant, because of his failure to give proper warning, the place is made temporarily dangerous and unsafe, by the doing of that which in the prosecution of the particular business was usual and necessary to be done, and the doing of which was but a part of, and incidental to, the proper conduct and management of such business itself. In other words, the court in effect holds that the obligation and duty of the master is that of a guarantor or insurer. Such is

not the law in Ohio. Hence the doctrine of this case can have no application in this state (*Railroad Co.* v. *Webb,* 12 Ohio St., 475; *Railroad Co.* v. *Fitzpatrick,* 32 Ohio St., 318). Further, the New Jersey rule for determining the liability of a master, and as to who are fellow servants, is not the same as the rule in Ohio. In New Jersey, the character of the work being performed is the governing test—*Knutter* v. *N. Y. & N. J. Telephone Co.,* 67 N. J. L., 646—while in Ohio the question of control is the test to be applied.

In the case at bar the only negligence shown, being the negligence of a fellow servant of the decedent, John Pachuta, the master, The Kelly Island Lime & Transport Co., can not be held liable for the results of such negligence. The plaintiff in error was, upon the record, entitled to have judgment in its favor, and its motion to arrest the case from the jury, and for judgment, should have been sustained.

*Judgment reversed and judgment for plaintiff in error.*