## DATE v. NEW YORK GLUCOSE CO.

(Supreme Court, Appellate Division, Second Department. April 21, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—VARIANCE.

Where the basis of an action for injuries to a servant was negligence in the employment of fellow servants who did not understand English, and not the notorious, reckless conduct of the fellow servants on prior occasions, evidence of a prior occasion on which the fellow servants carelessly injured another servant was irrelevant.

2. SAME—SPECIFIC ACTS OF INCOMPETENCY.

In an action for injuries to a servant caused by the reckless conduct of incompetent fellow servants, evidence of prior specific acts of incom-

petency on the part of such fellow servants is not admissible, unless coupled with further evidence that the master knew or should have known of them.

**3. TRIAL—EXCEPTIONS—NECESSITY OF RENEWAL.**
Where the court has announced that it will receive a certain class of testimony for a purpose stated, a party excepting thereto need not take any further objection to the same class of testimony in order to protect his rights.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 192.]

**4. SAME—SUFFICIENCY OF MOTION.**
In an action for injuries to a servant, testimony was given as to a prior act of negligence on the part of the servants who subsequently caused the injury to plaintiff, but there was no evidence that knowledge of the occurrence was brought to defendant. Defendant's counsel moved to strike such testimony on the ground that "what occurred * * * has not been connected." No suggestion was made by plaintiff that further evidence could be offered to connect the transaction with defendant. The court did not require such evidence, and no attempt to offer it was made. *Held*, that the error in the retention of the evidence was sufficiently brought to the court's attention, and an exception to its erroneous ruling refusing to strike the testimony was available to defendant on appeal.

**5. SAME—EXCEPTIONS TO CHARGE.**
An exception "to that part of your honor's charge in which you submit to the jury whether the direction of [the foreman] to put his ladder upon the track relieved plaintiff from contributory negligence" is sufficiently definite to cover whatever the court said in submitting the question referred to to the jury.

**6. MASTER AND SERVANT—FELLOW SERVANTS—FOREMEN—DIRECTION AS TO DETAILS.**
The act of a foreman in directing a servant in a detail of the work, as in telling him where to place a ladder, is the act of a fellow servant, and not the act of a vice principal, and does not relieve the servant from the consequences of any negligence that there may be in obeying such order, as in placing the ladder against a rail upon which loaded trucks are frequently passing, where the danger involved in such obedience is as obvious to the servant as to the foreman.

Appeal from Trial Term, Queens County.

Action by Albert Henry Date against the New York Glucose Company. From a judgment for plaintiff, and from an order granting him an extra allowance, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, RICH, and MILLER, JJ.

Frederick Hulse (Ernest F. Eidlitz, on the brief), for appellant.

Melville J. France, for respondent.

MILLER, J. The plaintiff has been awarded the sum of $20,000 damages by the verdict of a jury for injuries sustained in the state of New Jersey while in the employ of the defendant, a foreign corporation.

The plaintiff was employed to oil machinery. On the occasion in question he had placed the foot of a ladder against the rail of a car track extending through the defendant's factory; and while at the top of the ladder, oiling machinery attached to the ceiling, a truck loaded with cakes of sugar was pushed against the ladder,

knocking it from under the plaintiff, causing him to be caught in the shafting, and resulting in injuries of a very serious and permanent character. The plaintiff had been engaged at this work for about four months, always doing it in the same manner, which he says was according to the instructions given him by the foreman. The bottom of the ladder could have been rested upon the opposite side of, and away from, the car track; so as to have avoided contact with trucks; and the plaintiff testified that the only reason for not so placing it was that if he had not placed it as instructed he would get discharged. He testified: "I could have done it if it had not been for the orders." The plaintiff had habitually gone upon this ladder without having any one stationed at the bottom to guard against the approach of the trucks, although he knew they were frequently being pushed over this track. He had apparently relied upon the men seeing and warning him, or upon their stopping and waiting for him to get out of the way, as he testified, referring to the previous occasions: "They would come and warn me that they were coming up, or they would wait until I come off the ladder, and then they would proceed on their way. They would always come and tell me before they come by." He also says: "While oiling this cup I could not look down." Another man, employed to do the same work as the plaintiff, testified that when upon the ladder he always had a man stationed at the bottom. Whether the man was stationed there for the purpose of guarding against the approach of a truck, or simply to hold the ladder to keep it from slipping, is not entirely clear; but it is apparent that there was a man available to guard against the approach of a truck when the oilers were upon this ladder, although not employed for that purpose. The men pushing the truck which caused the plaintiff's injuries were foreigners unable to speak or understand English. The plaintiff claims that his attention was first attracted by hearing somebody call, "Look out! Look out! The ladder! Stop!" that, upon glancing down and seeing the men coming, he called, "Stop! stop!" The plaintiff's contention is that the inability of the men at the truck to understand English was the proximate cause of the accident, that they were in that respect incompetent fellow servants, and that therefore the defendant had failed to discharge the duty which it owed the plaintiff of employing competent fellow servants. The learned trial court submitted to the jury, as the sole question upon which the negligence of the defendant depended, whether it was negligent in employing men at this particular service who could not understand English. The men at the truck had been instructed to look out for the ladder, and to stop whenever it was up. The room was well lighted, there was nothing to prevent the men seeing the ladder, had they been attentive, and the trial court charged that they were negligent in running into this ladder, There was evidence tending to indicate that two of the men had been at work with this truck only one or two days, and the third eight or ten days. The evidence bearing upon the question as to how the men on previous occasions had learned of the presence of

the ladder is ambiguous, opposing counsel insisting upon conclusions of fact diametrically opposed. The evidence adduced by the plaintiff tends ·to indicate that he had relied solely upon the men discovering the ladder themselves, although at the close of the evidence, upon being recalled, he testified: "I did not know the men who were running the truck the day I was hurt did not understand English. I had been able to make the men understand before that time that I had seen;" while defendant's evidence tends to support the inference that some one did in fact warn the men of the presence of the ladder. The man who had been employed at the truck eight or ten days before the accident testified: "I never saw a man up oiling the machinery. When some one tells us, we stop." Another witness, who was working in the room where the accident occurred, and who says he called out just before the truck struck the ladder, testified: "I did not call out to them to stop the car on other occasions. I only hollered." The superintendent of the defendant testified: "I had observed them on different occasions stopping their car at this ladder, sometimes twice, three times a day; sometimes more than. that; give them signs so that they know what it means."

The proposition upon which the plaintiff's right to recover depends is somewhat novel, but, having reached the conclusion that there must be a new trial of the action for reasons not involved in the determination of that question, we refrain from deciding it now, because of the unsatisfactory condition of the record before us in the respects alluded to.

The plaintiff called a witness to testify to another previous accident occasioned by the fault of these men. After the witness had testified apparently without objection to the following, "The man come along wih a starch truck, and he ran into him," the following occurred:

"Defendant's Counsel: I object to that as incompetent. I move to strike it out on the ground that it is an independent, collateral transaction, under entirely different circumstances. The facts are not stated, and therefore incompetent. The Court: I will take it as bearing on the question of whether in fact these men were competent fellow workmen. (Defendant excepts.)"

Then followed a narration of the circumstances surrounding the transaction referred to before the objection indicating carelessness on the part of the men, and also tending to indicate that they could not understand English. At the close of the testimony of the witness, the following occurred:

"Defendant's Counsel: I move that this last witness' evidence be stricken out on the ground that it has not been proven that they were the same men who were around the truck at the time of the accident, and what occurred on the dock has not been connected. (Motion denied. Exception.)"

Evidence of a prior occurrence was not relevant. The plaintiff's case rested upon the proposition that the men did not in fact understand English, and was not based in any sense upon reckless conduct of the men on prior occasions, of which the master either had or ought to have had knowledge; but, even in the latter case, evi-

dence of specific acts of incompetency is not admissible unless coupled with evidence that they were either brought to the attention of the master, or that the circumstances were such that he ought to have had knowledge of them. Park v. N. Y. Central & H. R. R. Co., 155 N. Y. 215, 49 N. E. 674, 63 Am. St. Rep. 663; Baulec v. New York & Harlem R. Co., 59 N. Y. 356, 17 Am. Dec. 325. It is true that the first part of the objectionable evidence came in without objection. This was harmless, however, as compared with the evidence which followed the statement by the court of the theory on which he would admit it, and, while the motion to strike out the evidence might well have been denied upon the ground that it came too late, it was not denied upon that ground. The defendant's counsel contented himself with an exception to the ruling of the court that it would receive the evidence as bearing upon the question whether in fact the men were competent fellow workmen, and allowed the evidence which followed to be received without further objection; but where the court has announced that it will receive a certain class of testimony for a purpose stated, to which the party excepts, I do not think he is bound thereafter to take further objection to that same class of testimony in order to protect his rights. Shutz v. Union Railway Co., 181 N. Y. 33, 73 N. E. 491. As is well stated by Parker, C. J., in Stephens v. Ely, 162 N. Y. 78, 83, 56 N. E. 499:

"Appellate courts should not be diligent in seeking a way to deprive a party of the benefit of an exception pointing out error, where it appears that the court was fully apprised of the nature of the objection."

There was no pretense that knowledge of the transaction was brought to the defendant, and the harmful character of this testimony is apparent. The motion of the defendant's counsel at the close of the testimony of the witness to strike out on the ground that "what occurred on the dock has not been connected" sufficiently apprised counsel for the plaintiff and the court that, in the then condition of the record, the retention of that evidence was error. No suggestion was made by the plaintiff that any further evidence could be offered to connect the transaction with the defendant, no attempt to offer such evidence was made, the theory upon which the court ruled did not require it, and the exception to this erroneous ruling is available to the defendant in this court.

The court charged the jury (referring to the direction which the plaintiff testified he had received from the foreman):

"There is no evidence that there was any remonstrance against it by the employer, and you have a right to take all that into account in determining whether that is where he was directed to put the foot of his ladder. If he was directed to put the foot of his ladder there, and only obeyed the directions of his superior, who had a right to direct him, then the fact that he put it there could not be urged against him as negligence."

To which charge the defendant excepted in these words:

"I also except to that part of your honor's charge in which you submit to the jury whether the direction of Mr. Erwalt to put his ladder upon the track relieved the plaintiff from contributory negligence."

The respondent argues that the exception did not sufficiently point out the precise point sought to be raised, but that it in fact indicated that the court had simply submitted the question whether the direction of the foreman excused the plaintiff from any imputation of negligence, as one of fact. This argument is specious. We think the exception was sufficiently definite to cover whatever the court said in submitting the question referred to to the jury; and the charge that the directions received from the defendant's foreman, if they were in fact received, relieved the plaintiff from any imputation of negligence, is clearly error. In directing the plaintiff as to the manner of placing his ladder, the foreman was not discharging any duty which the master owed to him, but was directing him solely as to a detail of the work; and in doing this he was a fellow servant, because this case is controlled by the rule laid down in Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521, that the character of the act, and not the grade of the service, determines the liability of a master in a case where the immediate act or omission is that of a servant. This is not a case where the servant has a right to rely upon the greater knowledge of a superior in respect to some latent or hidden defect. The danger of resting his ladder against a rail upon which loaded trucks were frequently passing was as obvious to him as to the foreman. The case of Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, is directly in point, as being a case where the negligence complained of was that of a foreman in directing the plaintiff where he should work. Other cases in point are Loughlin v. State of New York, 105 N. Y. 159, 11 N. E. 371; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021; Madigan v. Oceanic Steam Navigation Co., 178 N. Y. 242, 70 N. E. 785. A charge that the direction of the foreman as to a simple matter like the placing of a ladder, where the situation was perfectly apparent, excused the plaintiff from any imputation of negligence, as matter of law, clearly violated this rule, settled by these and many other decisions of this state, because, in effect, it made the master responsible for the negligence of fellow servants.

These conclusions make examination of the other questions raised by the appellant unnecessary, and require a reversal.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur. ·