JOHN McQUEEN, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

*Negligence — injury to an employee from the failure of a coemployee or the foreman to properly place a snatch block under a windlass.*

In an action brought to recover damages for personal injuries sustained by the plaintiff while employed by the defendant in raising, by means of a windlass, timbers forming part of a trestle in the process of construction, it appeared that the legs of the windlass were fastened by screws to a frame of timbers, and that to prevent the strain of the weight being raised from being exerted in a horizontal direction against the windlass, and thus pulling it from its timber supports, an adjustable appliance called a snatch block was provided, which, when adjusted in its proper place under the windlass, would result in throwing the strain vertically on the drum of the windlass and thus hold it firmly to the timber supports; that the plaintiff's injuries resulted from the fact that the snatch block had been improperly placed in front of the windlass instead of under the windlass, thus throwing the strain of the weight horizontally upon the windlass and tearing it from its fastenings.

The defendant had furnished competent employees and workmen, and had instructed the workmen how to adjust the snatch block. The defendant's foreman was not present when the snatch block was last adjusted, and it did not distinctly appear who then adjusted it.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be reversed;

That the negligence which caused the accident was that of a coemployee of the plaintiff, viz., either that of the foreman in failing to properly adjust the snatch block in the first instance, or that of some employee in interfering with it after it had been properly adjusted, and that in either event the defendant was not liable.

McLENNAN, P. J., dissented.

APPEAL by the defendant, The Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 22d day of March, 1904, upon the verdict of a jury for $700, and also from an order entered in said clerk's office on the 22d day of March, 1904, denying the defendant's motion for a new trial made upon the minutes.

*Louis L. Babcock,* for the appellant.

*Guy B. Moore* and *Stone & Hanavan,* for the respondent.

STOVER, J.:

This action is brought to recover damages alleged to have been received through the negligence of the defendant.

Plaintiff is a laborer, and at the time of the accident was engaged in the service of the defendant in raising bents for a trestle work. The bents were raised by a winch or windlass set upon timbers. The bents consisted of a sill or bottom stick, two upright posts, one at either end, and a timber across the top of the upright posts, the four timbers being fastened together. The timbers in use at the time of the accident were about twelve by twelve inches; the upright posts were in the neighborhood of twenty feet long.

The plaintiff was engaged at the crank of the windlass; some one hallooed, " Jump, * * * she is going;" plaintiff jumped in front of the crab and received his injuries.

The machine or winch in use was a drum around which a rope was wound by the men turning the cranks on each end of the rollers which operated the drum by means of cogs. The winch was supported upon four legs, each one being fastered to the timber upon which it rested by a lag screw. The timbers to which the crab or windlass was fastened were six by twelve inches. In the operation

of the machine a rope was fastened to the bent, passed under a block called a snatch block, and over the drum ; the turning of the crank revolved the drum through the cogs, drew the top of the bent to which the rope was fastened, raising it until the bent was in position.

The whole apparatus may be appropriately described as a windlass geared to handles, the whole resting in a framework secured to supporting timbers. The snatch block was an essential portion of the machine in its operation and served to receive the horizontal strain in the operation of the winch. Its proper place was directly under the drum of the winch, and it was fastented to an independent support. The effect of this construction was that in the operation of the machine the strain was downward from the drum, the strain being upon the snatch block, this relieving the machine from its horizontal strain and serving to draw the machine more firmly to its supports.

The negligence alleged on the part of the plaintiff is that the defendant failed to properly secure the foot on the winch, in that it was fastened by lag screws instead of having bolts which would extend through the timber and fastened by nuts on the under side; that the machine was dangerous and that the place provided was not safe to work in.

The answer of the defendant is twofold, namely, *first,* that the defendant had provided both bolts and lag screws in sufficient number for use in the operation of the machine, and, *second,* that the accident was caused, not by reason of the lack of bolts, but by reason of the neglect of the employees to properly adjust the snatch block so as to insure the proper operation of the machine. The claim of the defendant was that the accident resulted solely from the neglect of the coemployees of the plaintiff to properly adjust the snatch block, it appearing clearly from the evidence that at the time the accident occurred the snatch block was not properly adjusted, but was so placed as to throw the lateral strain upon the framework of the machine and tear it from its supports.

There is no claim upon the part of the plaintiff that the defendant had not furnished competent foremen and other employees in the operation of this work, and the evidence shows that those in charge of the machine had been instructed where and how to place

the snatch block, and there is no dispute but that the purpose of the snatch block was to receive the horizontal strain in the operation of the machine.

It appears that the machine had been in use for some time, and that a great number of bents had been raised, plaintiff testifying that he had been at the work three or four weeks, perhaps, more or less, and that he had been engaged in tipping bents upright by use of the crab since they started to raise the trestle, which was four or five days or a week.

The court charged as follows : " There is no suggestion on the part of the plaintiff that there was anything lacking in the duty of the company so far as furnishing suitable materials with which to prosecute the work, other than the allegation that the bolts were not sufficient to secure the machine. It appears from the testimony in the case that the snatch block was improperly adjusted for the purpose of doing the work. The claim is that if the snatch block — and witnesses have testified to that — had been properly adjusted that it would have been directly under the drum of this machine, and that applying whatever force you saw fit by way of raising a timber would only make the machine firmer in its place, the greater the weight the greater the solidity, the greater the stability of the machine in the situation where it was placed would be, and that it would be unnecessary, if the block was properly placed, in the raising of the weight, to fasten the legs of the machine in any manner, either by bolts going through the timber with a nut on the under side, or by the use of lag bolts or spikes or blocking. It is said by these witnesses that the only necessity for any support of the machine about the leg would be necessary for unwinding the rope when you would get a pulling strain on the machine, that then it would be necessary to have enough at the legs to keep the machine from sliding off the timbers, and it has been suggested that the bolts that were used were adequate for that purpose. Upon this whole testimony you may conclude, possibly, when you come to examine it, that the difficulty which occurred, that the accident which befell the plaintiff, was not due to the fact that lag bolts were used, but was, rather, due to the misplacement of the snatch block through which the rope ran, and which gave way when a weight was attached to the other end of it, a pulling motion on the machine which almost

necessarily caused it to tip over and do the damage complained of. If you come to that conclusion, then the question is whether the master, whether the railroad company, had performed its duty in providing a safe place and safe materials or appliances to be used by the men in doing the work."

It was further charged that the foremen "went away from the machine without having it adjusted, without seeing it adjusted, without knowing how it was adjusted; in other words, they paid no attention to it. They left the men, nobody knows who, to go on and put the machine in shape and use it. That was the situation." And concluding: "Now, gentlemen, if you conclude upon all of the testimony, and upon the history of the case as given by the witnesses, that the master did come short of the performance of its duty in this respect, and that the plaintiff was injured through the failure of the company to discharge the duty which it owed to him of providing a safe place and safe appliances to do the work with, then the plaintiff is entitled to recover. If the defendant performed its duty, then he is not entitled to recover." The defendant excepted to this portion of the charge and requested the court to charge that if either one of the foremen referred to by the court was negligent in not seeing to it that the block was properly adjusted under the windlass, that their negligence, under the circumstances proved, was the negligence of a fellow-servant of the plaintiff, which request the court declined and an exception was duly taken.

The defendant also asked the court to charge "that the defendant is not liable for a failure to properly adjust the snatch block in this case," which was declined and an exception was taken.

This raised squarely the question as to whether it was the duty of the master to not only furnish the proper appliances for the purpose of performing the work, and competent foremen to conduct the work, but to see that the foremen personally attended to the detail in the performance of the work. The theory upon which the case went to the jury was that they might, under the evidence, find that the defendant had furnished either an unsafe place or a defective appliance for doing the work.

The evidence was undisputed in the case that at the time of the happening of the accident the snatch block, instead of being placed under the machine where it properly belonged, had been placed to

the front; that this was an improper placing of the snatch block, and that the effect of thus placing it was to throw the horizontal or lateral strain upon the machine and tear it from its fastenings. There is no suggestion that the machine itself was imperfect, and no claim that the place was dangerous in the ordinary operation of the machine. The men had been instructed how to place the snatch block, but upon the particular occasion when this machine was moved neither foreman was present when the snatch block was adjusted. The foreman stated that he was there when the crab was moved up ahead and put in place, and he knew the snatch block was under there when they moved the crab, and that each man had his attention called to watch out and to look out. It does not distinctly appear, however, who adjusted the snatch block on this occasion, nor how it came in the position where it was, but we do not think that this is sufficient to charge the master with negligence. It has furnished proper appliances; it has furnished competent foremen in the use of this machinery, and the manner of performing the detail of the work is left to the judgment of the foremen. The foreman may instruct the men in the manner of doing the work, he may even place certain portions of the details in charge of other employees; and if he does so his error of judgment is not imputable to the master. Having furnished a place as reasonably safe as the business and employment admits, proper appliances and competent foremen, it has discharged its duty towards its servant. The accident undoubtedly in this case occurred through the neglect of somebody to properly adjust the snatch block, but this was through no fault of the master. The fault was that of a coemployee, either the foreman failing to properly adjust it in the first instance, or by the interference of some employee after its adjustment. In either event the master could not control, nor did it fail in its duty towards the servant.

In *Cullen* v. *Norton* (126 N. Y. 1) the negligence was predicated upon the failure of the master to provide a safe place, there being at the time an undischarged hole within two feet of the spot at which the deceased was ordered to commence drilling, and in some way the charge was exploded, killing the plaintiff's intestate. It was there held that the master had discharged his duty, that the negligence of the foreman was not imputable to the master, but was

a detail of the work which might properly be left to the judgment of the foreman.

In *Capasso* v. *Woolfolk* (163 N. Y. 472), where the claim of negligence was that the employer had not performed his duty by discovering the dangerous character of the position, it was held that such was a detail of the work properly left to the judgment of the foreman.

In *Madigan* v. *Oceanic Steam Nav. Co.* (178 N. Y. 242) there was an omission to furnish light, although the master had furnished lamps, and the foreman failed to see that they were lighted.

Applying the principle to this case, we have a master furnishing a machine which in its operation must be moved from place to place, but through the neglect of an employee, whether foreman or otherwise — and the fact that the foreman is of a higher grade than the injured person makes no difference in the application of the rule — to properly adjust the block, although instructed to do so, the plaintiff is injured. The master could have done nothing more than it did. The machine was properly built; there was no inherent defect in the machine itself, but the cause of the accident was the failure of some one to properly place the snatch block. If it had been the failure of some one to properly fasten the end of the rope so that when the weight was thrown upon it it would slip and allow the bent to fall, it could hardly have been claimed that the master had been negligent. Or if an employee had improperly placed the handle of the machine so that it could not hold the weight which was required, negligence could hardly be predicated against the master; and yet these illustrations are no less liable to happen in the prosecution of the work than the one in question. A holding that the master would be liable for the failure of an employee to properly adjust the snatch block, we think, would extend the rule further than its application would warrant, and would go far towards constituting the master a guarantor of the safety of its servants.

We think the defendant was entitled to the ruling asked for, and that the judgment should be reversed.

All concurred, except McLennan, P. J., who dissented.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event upon questions of law and of fact.